**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW WHITE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v s . <br><br> NANO-X IMAGING LTD., RAN POLIAKINE, and ITZHAK MAAYAN, Defendants. | 1:20-cv-04355-WFK-MMH <br><br> CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION FOR CONSOLIDATION OF RELATED ACTIONS**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT........................................................................................................................3

I.      THE RELATED ACTIONS ALL CONCERN SUBSTANTIALLY SIMILAR
        ALLEGATIONS, INCLUDING WHETHER NANO-X'S X-RAY IMAGING
        PRODUCT CONCERNED "NOVEL" TECHNOLOGY ...................................................3

II.     THE RELATED ACTIONS PRESENT IDENTICAL CLAIMS DURING
        OVERLAPPING CLASS PERIODS...................................................................................6

III.    CONSOLIDATION DOES NOT REQUIRE IDENTICAL PLAINTIFFS .......................7

IV.     CONSOLIDATION WILL PROMOTE JUDICIAL ECONOMY AND AVOID
        THE POTENTIAL FOR DUPLICATIVE DISCOVERY....................................................9

V.      CONSOLIDATION DOES NOT REQUIRE THAT RELATED ACTIONS BE
        IN THE SAME STAGE PROCEDURALLY.......................................................................10

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

### CASES                                                                        Page

*Arroyo v. Chardon*,
    90 F.R.D. 603 (D. P.R. 1981) ....................................................................................9

*Dolan v. Axis Capital Holdings*,
    No. 04 Civ. 8564(RJH), 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ................................7

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ...............................................................................8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007),
    *rev'd in part on other grounds on reconsideration in part sub nom.*
    *In re IMAX Securities Litigation*,
    No. 06 Civ 6128(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ...............................6

*Kelly v. Kelly*,
    911 F. Supp. 66 (N.D.N.Y. 1996) .............................................................................6

*In re Olsten Corp. Securities Litigation*,
    3 F. Supp. 2d 286, *aff'd on reconsideration*,
    181 F.R.D. 218 (E.D.N.Y. 1998) ...........................................................................7, 8

*In re Pfizer Inc. Securities Litigation*,
    233 F.R.D. 334 (S.D.N.Y. 2005) .............................................................................5

*Pinkowitz v. Elan Corp., PLC*,
    No. 02 CIV. 865(WK), 2002 WL 1822118 (S.D.N.Y. July 29, 2002) ................................8

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................8

*Rauch v. Vale S.A.*,
    378 F. Supp. 3d 198 (E.D.N.Y. 2019) .....................................................................6, 7

*Stein, Hall & Co. v. Scindia Steam Nav. Co.*,
    264 F. Supp. 499 (S.D.N.Y. 1967) ..........................................................................9

*In re Synergy Pharmaceuticals Inc. Securities Litigation*,
    No. 18-CV-873 (AMD) (VMS), 2020 WL 5763830
    (E.D.N.Y. Sept. 28, 2020), *appeal dismissed sub nom.*
    *McMullen v. Hamilton*, No. 20-3705 (L), 2021 WL 1702868
    (2d Cir. Apr. 21, 2021)...........................................................................................7

*Werner v. Satterlee, Stephens, Burke & Burke*,
 797 F. Supp. 1196 (S.D.N.Y. 1992)...............................................................................8, 10

## STATUTES AND RULES

15 U.S.C. § 78j(b) ...........................................................................................................6

15 U.S.C. § 78t(a) ...........................................................................................................6

15 U.S.C. § 78u-4 ...........................................................................................................8

Fed. R. Civ. P. 42 ...........................................................................................................1

Defendants Nano-X Imaging Ltd. ("Nano-X" or the "Company"), Ran Poliakine and Itzhak Maayan (together, the "Individual Defendants") (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to consolidate three related securities class action lawsuits on behalf of purchasers of Nano-X securities.

## PRELIMINARY STATEMENT

In the Opening Brief,[1] Defendants detailed the quintessential circumstances warranting consolidation of the Related Actions pursuant to Federal Rule of Civil Procedure 42: that they involve the same set of defendants, allege identical legal claims, concern overlapping class periods, cite overlapping SEC filings and statements within those filings allegedly containing misrepresentations, and concern sufficiently common questions of law and fact, all pertaining to the Company's primary commercial product, the Nanox.ARC.  (*See* Br. 6-10.)  Unable to seriously dispute these significant overlaps, in the Opposition,[2] plaintiffs Davian Holdings Limited, Edward Ko, and Derson O. Jolteus (collectively, "Plaintiffs") instead argue, in essence, that the Related Actions do not concern **perfectly** identical claims—ignoring both the applicable legal standards governing this motion and the purpose underlying consolidation.  (Opp. 9-13.)

Plaintiffs' attempts to split hairs over what they perceive as differences in the overlapping factual claims, class periods, filings and statements in the Related Actions are misguided because the actions "need not be *identical* to allow for consolidation."  (Br. 6 (emphasis added).)

---

[1]  "Opening Brief" or "Br." refers to the Memorandum of Law in Support of Defendants' Motion to Consolidate Related Actions.  All other capitalized terms shall have the same meaning as assigned in the Opening Brief unless otherwise defined.

[2]  "Opposition" or "Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Consolidation.

First, Plaintiffs attempt to mischaracterize the claims in the Related Actions. They contend the *White*/*Duarte* actions focus on the "alleged novelty" of the Nanox.ARC, including whether the Company could "substantiate" the functionality of the product, and whether the Company had real customers to buy the product. (Opp. at 9.) In other words, the *White*/*Duarte* claims focus on the viability and marketability of the Nanox.ARC. Plaintiffs argue that, in contrast, the *McLaughlin* claims "are focused on the alleged marketability and customer attractiveness of the Nanox.ARC." (*Id.* at 10.) If those sound like the same basic claims, that is because they are. Attempting to distinguish the claims, Plaintiffs trip over their words, arguing that the *McLaughlin* claims are not about the "novelty or lack thereof of the Nanox.ARC product." Yet, almost every allegedly misleading statement alleged in *McLaughlin* concerns how the Company's *novel* digital X-ray source could potentially allow for a lower-cost production of the Nanox.ARC while achieving the same functionalities as legacy X-ray analog cathodes. (Ex. 4 ¶¶ 66, 68, 70, 78, 80, 84, 95.)

In any event, the Related Actions concern overlapping statements from the Company's July 30, 2020 Registration Statement, a factor courts have routinely held warrants consolidation in securities class actions. According to Plaintiffs, however, this is of no moment, because *McLaughlin* involves additional statements. (Opp. 12-13.) As discussed below, Plaintiffs' argument that this renders the cases unsuitable for consolidation is wrong.

Second, without support, Plaintiffs ask the Court to deny consolidation because the class periods are not identical. (Opp. 12-13.) The law is clear, however, that consolidation is appropriate, despite differences in class periods, for cases with similar factual and legal claims.

Third, Plaintiffs again cite no support for their theory that consolidation should be denied because the named plaintiffs are supposedly "vastly different." (Opp. 13.) The plaintiffs in all

2

three actions purport to represent classes of purchasers of Nano-X securities and must act in their best interest. The putative class members' rights would be best protected in an action asserting all viable claims of the broader, consolidated class. The *White*/*Duarte* plaintiffs appear most focused on the potentially lucrative role they are seeking as lead plaintiff/lead counsel, complaining that due to the timing of their stock purchases and sales they may not be suitable class representatives for the claims asserted in the *McLaughlin* action. But many other members of the narrower *White* and *Duarte* putative class would be members of the *McLaughlin* putative class, and vice versa. Plaintiffs' argument at best raises a question of who should be the class representative in a consolidated action, not whether the cases should be consolidated in the first place.

Finally, Plaintiffs gloss over the fact that the Related Actions involve identical defendants and concern identical legal claims pertaining to the Company's Nanox.ARC product. Plaintiffs instead argue that consolidating the actions will result in inefficiency and expense that will fall on the *White* and *Duarte* plaintiffs. While Defendants believe both actions are ripe for dismissal, Plaintiffs ignore that the core discovery, if any, concerning the Nanox.ARC will likely overlap given the significant factual and legal overlap between the actions. As a result, consolidation is necessary to promote judicial economy and avoid the potential for Defendants to produce duplicative discovery.

**ARGUMENT**

I.    **THE RELATED ACTIONS ALL CONCERN SUBSTANTIALLY SIMILAR ALLEGATIONS, INCLUDING WHETHER NANO-X'S X-RAY IMAGING PRODUCT CONCERNED "NOVEL" TECHNOLOGY**

Plaintiffs argue that the *McLaughlin* action, unlike the *White* and *Duarte* actions, "does not concern the novelty . . . of the Nanox.ARC product." (Opp. 10-11.) This is simply not true. In *McLaughlin*, the plaintiffs allege that statements describing the imaging capabilities of the

Nanox.ARC were false and misleading, (Ex. 4 ¶ 5), repeatedly pointing to Defendants'

statements that the Company's novel digital X-ray source would potentially allow for lower-cost

production of the Nanox.ARC while achieving the same functionalities as legacy X-ray analog

cathodes. (Ex. 4 ¶ 66.) For example, the *McLaughlin* plaintiffs point to the following statement

from Defendants' July 30, 2020 Registration Statement as being allegedly false and misleading:

> As a first step to producing a new class of affordable medical imaging systems,
> we have focused on identifying and developing a novel X-ray source. Our X-ray
> source is based on a novel digital microelectromechanical system ("MEMs")
> semiconductor cathode that we believe can achieve the same functionalities as
> legacy X-ray analog cathodes, while allowing for lower-cost production than
> existing medical imaging systems.
>
> If cleared, we plan to market and deploy the Nanox System globally at a
> substantially lower cost than currently available medical imaging systems, such as
> computed tomography ("CT"), because our digital X-ray source will allow the
> Nanox.ARC to have a simpler structure without the costly cooling equipment or
> the complex rotating mechanism used in legacy CT devices.

(Ex. 4 ¶ 66. *See also id.* ¶¶ 68, 70, 78, 80, 84, 95.) Thus, the crux of the allegations in the

*McLaughlin* action rests on the various statements made by Defendants concerning the novel

technology underlying the Nanox.ARC and what they say was an inapt comparison to a CT

scanner. (Ex. 4 ¶ 49.) Plaintiffs argue that the *White*/*Duarte* cases, and the Citron report on

which they are based, in contrast, do not concern "the Nanox.ARC's capabilities vis a vis the CT

scanner" (Opp. 13) but they ignore their allegation, quoting the Citron report, that Nano-X "**has**

**never published any data showing their machine's images compared to images from a**

**standard CT scanner**." (Ex. 1 ¶ 24; Ex. 2 ¶ 25) (emphasis in original).)

Moreover, the *McLaughlin* action specifically includes allegations that Nano-X's patent

applications did not "concern novel technology that would explain the alleged lower cost of

assembling the Nanox.ARC." (Ex. 4 ¶¶ 59-60.)

Plaintiffs argue that, unlike the *White* and *Duarte* actions, in which the "'novel' claim is the focus of the alleged misstatements," the *McLaughlin* complaint uses the term "novel" merely descriptively.  (Opp. 11.)  However, Plaintiffs conveniently ignore the multiple instances in which the *McLaughlin* complaint specifically emphasizes the term "novel" as the focus of the alleged misstatements—just like the *White* and *Duarte* complaints:

> As a first step to producing a new class of affordable medical imaging systems, we have focused on identifying and developing a novel X-ray source.  Our X-ray source is **based on a novel digital microelectromechanical system ("MEMs") semiconductor cathode that we believe can achieve the same functionalities** as legacy X-ray analog cathodes, while allowing for lower-cost production than existing medical imaging systems.
>
> . . .
>
> Realizing that the X-ray tube technology has essentially not changed in more than 100 years and remains a significant source of complexity and cost-driver of existing X-ray-based medical imaging systems, **we developed a novel digital X-ray source that we believe addresses these drawbacks and will enable a new class of medical imaging systems that can be produced at a significantly lower cost than the existing systems.**

(Ex. 4 ¶¶ 66, 84 (emphasis in original).)  Thus, the issues in *White*/*Duarte* and *McLaughlin* are intertwined and Defendants should not be required to litigate each half of the challenged statement on parallel tracks.

In any event, whether each action focuses on novelty, functionality, or customer base for the Nanox.ARC, the crux of the plaintiffs' claims in all actions is that they were supposedly misled about the products' commercial prospects.

Furthermore, courts in this district routinely consolidate securities class actions "where the actions involv[e] 'the "same public statements and reports"'" and where consolidation would not prejudice defendants."  *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 336 (S.D.N.Y. 2005) (citations omitted).  Here, consolidation is particularly appropriate because the Related Actions concern overlapping statements from the Company's July 30, 2020 Registration Statement

5

concerning the Nanox.ARC. (Br. 8-9.) That the complaints focus on different passages from that document is irrelevant because an issuer's disclosures must be read as a whole in determining whether they are misleading. Plaintiffs' response that consolidation is not warranted because the *McLaughlin* complaint cites additional sources (Opp. 12) is also of no moment, because the fact that the *McLaughlin* action "has a longer class period, and thus contains additional allegations" pertaining to statements from sources other than the July 30, 2020 Registration Statement, "does not render consolidation inappropriate." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 205 (E.D.N.Y. 2019).

## II.     THE RELATED ACTIONS PRESENT IDENTICAL CLAIMS DURING OVERLAPPING CLASS PERIODS

Plaintiffs do not dispute that the Related Actions concern identical provisions of the Securities Exchange Act of 1934 (the "Exchange Act"), with each action asserting claims under Sections 10(b) and 20(a), 15 U.S.C. §§ 78j(b) and 78t(a), relating to Nano-X's disclosures concerning the Nanox.ARC.[3] Plaintiffs also do not dispute that the class period in the *McLaughlin* action fully encompasses the class period in the *White* and *Duarte* actions. Instead Plaintiffs argue, without support, that consolidation is not warranted because the class periods "have limited temporal . . . overlap." (Opp. 12.) But courts have expressly held that class periods need not be identical in order to find consolidation appropriate for cases with similar factual and legal claims. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in . . . the class period do not render consolidation inappropriate . . ."), *rev'd in*

---

[3] Plaintiffs cite to *Kelly v. Kelly*, 911 F. Supp. 66 (N.D.N.Y. 1996) to argue that common questions of law and fact do not necessitate consolidation. (Opp. 8.) But that case, unlike here, involved different *legal* claims. *Id.* at 69. The court denied the motion to consolidate because the first action involved claims of slander, while the second action involved claims for fraud, undue influence, and other allegations. *Id.*

6

*part on other grounds on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06 Civ 6128(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *In re Synergy Pharms. Inc. Sec. Litig.*, No. 18-CV-873 (AMD) (VMS), 2020 WL 5763830, at *2-3 (E.D.N.Y. Sept. 28, 2020) (holding that class periods being overlapping, and not identical, was "not an obstacle to consolidation"), *appeal dismissed sub nom. McMullen v. Hamilton*, No. 20-3705 (L), 2021 WL 1702868 (2d Cir. Apr. 21, 2021).[4]  In any event, "the filing of a consolidated complaint and the determination of class certification each offer opportunities to resolve remaining issues concerning the differing class periods." *Rauch*, 378 F. Supp. 3d at 205 (citation omitted).  The same is true with respect to any alleged differences in corrective disclosures.  (Opp. 12-13.)

## III.    CONSOLIDATION DOES NOT REQUIRE IDENTICAL PLAINTIFFS

Citing nothing in support, Plaintiffs claim that the fact that plaintiffs in the two actions are "vastly different" somehow weighs against consolidation.  (Opp. 13-14.)  This argument is inapposite for several reasons.  First, it is clear that Plaintiffs do not take issue with the *plaintiffs* being different; rather, Plaintiffs fear that if the actions are consolidated, they may no longer be the appropriate *class representatives* due to differences in timing and amounts of stock purchases among the various lead plaintiffs.  (Opp. 13.)  However, the mere fact that lead plaintiffs may be required to cede their control of the litigation in favor of a new class representative does not weigh against consolidation.

---

[4]    *See also Dolan v. Axis Cap. Holdings*, No. 04 Civ. 8564(RJH), 2005 WL 883008, at *2 (S.D.N.Y. Apr. 13, 2005) (finding consolidation of cases with "similar or overlapping claims under Sections 10(b) and 20(a) of the [Exchange] Act" appropriate despite different but "coextensive" class periods); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d. 286, 292-94 (consolidating actions alleging violations of Section 10(b) and 20(a), despite the fact that one of the four complaints specified a class period which began before and ended during the class period alleged in the other three complaints), *aff'd on reconsideration*, 181 F.R.D. 218 (E.D.N.Y. 1998).

> Consolidation, however, is appropriate even in cases where there are differences in causes of action, defendants, or the class period, as long as there are common questions of fact and law.  Although the Exchange Act Plaintiffs portray their claims as so unique to warrant a separate action with their own representation, the similarities between their claims and the Securities Act claims warrant consolidation. . . . In addition, the determination of which claims to assert in the consolidated complaint will be determined by the Court-appointed lead plaintiff, who is charged with acting in the best interest of all class members.

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 35-36 (S.D.N.Y. 2012) (alteration in original) (citation omitted).  Here, no lead plaintiff has been appointed in the *White*/*Duarte* actions, and the mere fact that consolidation might alter the proper choice for lead plaintiff or class representative is irrelevant.  Moreover, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4, consolidation is typically decided contemporaneously with or before the selection of lead plaintiffs.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii) (stating if any party has sought to consolidate multiple class actions, "the court shall not make the determination [of lead plaintiff] until after the decision on the motion to consolidate is rendered.").

Regardless, the fact that the plaintiffs in these two actions are different does not defeat consolidation.  *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) ("The fact that there are different parties in this action does not mean this case should not be consolidated."); *accord Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004); *Pinkowitz v. Elan Corp., PLC*, No. 02 CIV. 865(WK), 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002); *see also Olsten Corp.*, 3 F. Supp. 2d at 291-94 (consolidating actions where interests of two named plaintiffs were purportedly in conflict).

## IV.   CONSOLIDATION WILL PROMOTE JUDICIAL ECONOMY AND AVOID THE POTENTIAL FOR DUPLICATIVE DISCOVERY

Plaintiffs argue that any efficiencies from combining the cases will be outweighed "by the inefficiency and expense that will fall upon the *White* and *Duarte* plaintiffs if they are required to try their case along with the *McLaughlin* plaintiffs and participate in discovery proceedings" that cover a broader period of time.[5]   (Opp. 14.)  But that concern is vastly overblown.  The core documents concerning the Nanox.ARC and the knowledgeable witnesses will likely overlap substantially.  And the *White*/*Duarte* plaintiffs who make this argument ignore that many members of the class they purport to represent will also be members of the broader class and would be best served if all viable claims are asserted on their behalf in one proceeding.

Lastly, it should be noted that, although the *McLaughlin* lead plaintiffs joined the Opposition, they do not argue they would suffer any prejudice from consolidation.  To the contrary, as noted above, some members of the putative *McLaughlin* class are also members of

---

[5]   Plaintiffs cite to *Stein v. Hall & Co. v. Scindia Steam Nav. Co.*, 264 F. Supp. 499 (S.D.N.Y. 1967) and *Arroyo v. Chardon*, 90 F.R.D. 603 (D. P.R. 1981) as examples of cases that denied motions to consolidate because the possible prejudice due to the likelihood of confusion in jurors' minds outweighed benefits of convenience or judicial economy.  (Opp. 14.)  But both cases are inapplicable here.  In *Stein*, the court *granted* the motion to consolidate after determining that the common questions of law and fact outweighed any inconvenience, delay or expense to the parties that would result from requiring each party to attend trials of some issues in which it was not involved.  264 F. Supp. at 501.  In *Arroyo*, the court denied the plaintiffs' motion to consolidate nine Section 1983 cases involving allegations of political discrimination against defendants because the "alleged acts of the defendants in each particular case . . . [were] different to each [plaintiff]" and each plaintiff's claim had to be "proven by presenting evidence of specific acts in which defendants acted maliciously, willfully, and in reckless disregard of plaintiffs' constitutional rights."  90 F.R.D. at 605. The court's concern was that given the large number of cases involved, the jury would not be able to weigh the evidence in each case impartially if they were consolidated, resulting in prejudice to the defendants' right to a fair trial.  *Id.* at 606.  No such concern has been raised in this case.

the overlapping putative class in *White*/*Duarte* and presumably would not want to fund the work of two sets of lead plaintiffs and lead counsel, so their interests, at least, would be served and not prejudiced by consolidation.

## V.   CONSOLIDATION DOES NOT REQUIRE THAT RELATED ACTIONS BE IN THE SAME STAGE PROCEDURALLY

Plaintiffs argue that consolidation is inappropriate because the Related Actions are in different stages procedurally, arguing that a briefing schedule for a motion to dismiss has already been set in the *McLaughlin* action.  (Opp. 3.)  However, the "fact that the cases may be in different stages does not bar consolidation." *Werner*, 797 F. Supp. at 1212.  Importantly, a motion to dismiss has not been filed in either case, much less has either case undertaken any discovery.  As such, the cases proceeding in tandem will promote judicial efficiency, and there is no prejudice in consolidating them.

### CONCLUSION

For the foregoing reasons, the Related Actions should be consolidated.

Dated:  New York NY
            June 24, 2022

Respectfully submitted,

/s/ *Susan L. Saltzstein*
Susan L. Saltzstein
Christopher P. Malloy
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
susan.saltzstein@skadden.com
christopher.malloy@skadden.com

*Attorneys for Defendants*