**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATHEW WHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>NANO-X IMAGING LTD., RAN POLIAKINE, and ITZHAK MAAYAN, Defendants. | Civil Action No. 1:20-cv-04355-WFK-MMH<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**
**FOR CONSOLIDATION**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  BACKGROUND .......................................................................................................... 4

    A.   The *White* and *Duarte* Actions Assert Identical Claims, Cover Identical Class Periods and Allege the Same Single Corrective Disclosure ................................... 4

    B.   The *McLaughlin* Action Asserts Fundamentally Different Claims Than the *Duarte* and *White* Actions, Alleges Several Sources of Misrepresentations, Covers a Different Class Period and Alleges Different Corrective Disclosures .................... 6

III. LEGAL STANDARD.................................................................................................... 8

IV.  ARGUMENT: THE WHITE AND DUARTE ACTIONS AND THE MCLAUGHLIN ACTION INVOLVE MATERIALLY DIFFERENT CLAIMS AND DIFFERENT QUESTIONS OF LAW AND FACT .................................................................. 9

V.   ARGUMENT:  THE WHITE AND DUARTE ACTION AND THE MCLAUGHLIN ACTION HAVE LIMITED TEMPORAL AND FACTUAL OVERLAP ....................... 12

VI.  ARGUMENT:  THE WHITE AND DUARTE ACTION AND THE MCLAUGHLIN ACTION HAVE VASTLY DIFFERENT PLAINTIFFS .................................................. 13

VII. ARGUMENT:  DISCOVERY AND THE ISSUES TO BE TRIED IN THE MCLAUGHLIN ACTION WILL BE VASTLY DIFFERRENT AND FOR A BROADER TIME PERIOD THAN THE DISCOVERY NECESSARY TO PROSECUTE THE WHITE/DUARTE ACTIONS ....................................................... 14

VIII. CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arroyo v. Chardon*,
   90 F.R.D. 603 (D. P.R. 1981) ..............................................................................................14

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)..............................................................................................8, 9

*Johnson v. Syracuse Inn Syracuse,* No. 5:22-CV-0396 (GLS/ML),
   2022 WL 1813914 (N.D.N.Y. June 2, 2022)..............................................................................8

*Kelly v. Kelly*,
   911 F. Supp. 66 (N.D.N.Y. 1996) ..............................................................................................8

*M&T Mortg. Corp. v. White,* No. CV-04-4775 (WFK)(VVP),
   2012 WL 715896 (E.D.N.Y. Feb. 14, 2012)..............................................................................8

*Stein, Hall & Co. v. Scindia Steam Nav. Co.*,
   264 F.Supp. 499 (S.D.N.Y. 1967)..............................................................................................14

## **Rules**

Fed. R. Civ. P. 42(a) ..............................................................................................3, 8

## I.    PRELIMINARY STATEMENT

Pending before this District Court are three securities class actions[1] which concern a product known as the Nanox.ARC.  By virtue of this similarity, Defendants move to consolidate the *White* and *Duarte* actions (an unopposed motion to consolidate the two actions and appoint lead plaintiff is pending in front of this Court) with the *McLaughlin* action (pending in front of Judge Kovner, who has already appointed a lead plaintiff and set a schedule for briefing on a motion to dismiss).  Other than this similarity, the actions are vastly different, with class periods that overlap by only three-and-a-half weeks (the total length of the *White* and *Duarte* class period) out of over 64 weeks (the *McLaughlin* class period), totally different claims and only *one* overlapping source of material misrepresentations—the Initial Public Offering ("IPO") Registration Statement, out of 13 sources, as alleged in the *McLaughlin* action.

*First*, the claims in the *White* and *Duarte* actions are fundamentally different from the claims in *McLaughlin*.  In *White* and *Duarte*, the claims are identical and are centrally focused on the Company's claim that its product, the Nanox.ARC is "novel."  The *White* and *Duarte* actions also assert a claim that Defendants fabricated commercials agreements.  None of these claims are made in the *McLaughlin* action.  In contrast, the claims in *McLaughlin* focus on the false and/or misleading statements regarding costs of production and alleged competitive marketability of the Nanox.ARC, *regardless of its novelty* or any details regarding the Company's commercial arrangements. In fact, Defendants' entire effort to consolidate *McLaughlin* with *White/Duarte* is premised on two self-serving mischaracterizations of the actions:  (i) that the *White/Duarte* actions

---

[1] The actions are:  *White v. Nano-X Imaging Ltd.*, No. 1:20-cv-04355 (E.D.N.Y. compl. filed Sept. 16, 2020) ("*White*"), *Duarte v. Nano-X Imaging Ltd.*, No. 1:20-cv-04528 (E.D.N.Y. compl. filed Sept. 24, 2020) ("*Duarte*"); and *McLaughlin v. Nano-X Imaging Ltd.*, No. 1:21-cv-05517 (E.D.N.Y. compl. filed Oct. 5, 2021), which was subsequently designated *In Re Nano-X Securities Litigation*, No. 1:21-cv-05517 (E.D.N.Y. am. compl. filed Apr. 12, 2022) ("*McLaughlin*").

have one core claim (the alleged "novel" Nanox.ARC), when in fact there is a second claim concerning the fabrication of customer collaboration agreements, which Defendants entirely ignore; and (ii) that the *White/Duarte* claim concerning the alleged "novel" Nanox.ARC overlaps with *McLaughlin's* claim centered on the alleged ability of the Nanox.ARC to compete with the CT scanner and at a lower cost—no such overlaps exists.

*Second,* the cases have a limited temporal and factual overlap. The *White* and *Duarte* actions involve a three-and-a-half-week class period and only one source of misrepresentations at issue (the IPO Registration Statement), specifically statements within the IPO Registration Statement describing the Nanox.ARC and the sales agreements Defendants had supposedly executed. In contrast, the *McLaughlin* action spans a class period of over 64 weeks and sets forth approximately 13 different sources of misrepresentations concerning the alleged comparability of the Nanox.ARC with the CT scanner at an allegedly much lower cost. Furthermore, the actions have different corrective disclosures, occurring fourteen months apart from each other.

*Third*, the plaintiffs in the respective actions are vastly different. One of the *White* plaintiffs (the plaintiffs who moved for lead appointment) sold his stock before the *McLaughlin* corrective disclosure, he is therefore unable to be a class representative for the *McLaughlin* claims. The second *White/Duarte* plaintiff did not purchase any stock during the *McLaughlin* class period and his lack of purchases later into the *McLaughlin* class period may cast doubt on whether he can pursue claims for misleading statements issued much later. Similarly, the *McLaughlin* Lead Plaintiff did not purchase shares until long after the end of the *White/Duarte* class period, which means it would not be able to pursue the *White/Duarte* claims.

*Finally*, the discovery and the issues to be tried in the *McLaughlin* action will be vastly broader and different than the discovery necessary to prosecute the *White/Duarte* actions, which is sure to cause unnecessary inefficiencies and expense for the *White/Duarte* plaintiffs.

In addition to these glaring differences, the actions are in different stages procedurally. While the motion for lead appointment and to consolidate the *White* and *Duarte* actions was filed by the *White* plaintiffs and is unopposed since 2020 (*see* No. 1:20-cv-04355, ECF Nos. 12-14, 25-26, 28-29), the Court has yet to enter an order. The actions have not been consolidated and consequently no consolidated amended complaint has been filed. In contrast, in *McLaughlin,* an order appointing lead plaintiff was entered in January 2022, an amended complaint has been filed, briefing schedule for the motion to dismiss has been set, Defendants have filed a pre-motion conference letter and Lead Plaintiff's letter is due on June 21, 2022. *See McLaughlin,* No. 1:21-cv-05517, ECF Nos. 22, 24, 30.

Fed. R. Civ. P. 42(a) makes clear that a trial court has discretion to consolidate *only* if it determines that consolidation is appropriate. Defendants have previously tried to consolidate the *White/Duarte* actions with the *McLaughlin* action and were unsuccessful (*see McLaughlin,* No. 1:21-cv-05517, Docket Entry, January 4, 2022). Now, once again, their motion should be rejected. The *White/Duarte* actions do not share common questions with the *McLaughlin* action, the cases have differing claims, have a limited temporal and factual overlap, have vastly different plaintiffs and consolidation is sure to cause unnecessary inefficiencies and expense. Accordingly, Defendants' motion to consolidate should be denied.

## II.    BACKGROUND

### A.    The *White* and *Duarte* Actions Assert Identical Claims, Cover Identical Class Periods and Allege the Same Single Corrective Disclosure

The *White* and the *Duarte* actions were filed on September 2020 against Defendants Nano-X Imaging, Ran Poliakine and Itzhak Maayan.  (*White* Complaint), Ex. 1 to the Declaration of Veronica V. Montenegro ("Montenegro Decl.")[2] at ¶¶ 1, 7-9; Ex. 2 (*Duarte* Complaint) at ¶¶ 1, 7-9.  The complaints have the same class period—August 21, 2020 to September 15, 2020, both dates inclusive and are virtually identical.  Ex. 1 (*White* Complaint) at ¶ 1; Ex. 2 (*Duarte* Complaint) at ¶¶ 1.  For example, both actions allege false and/or misleading statements only in the Company's IPO Registration Statement.  Ex. 1 (*White* Complaint) at ¶¶ 19-221; Ex. 2 (*Duarte* Complaint) at ¶¶ 19-22.  They allege that the false and/or misleading statements concerned "the Company's commercial agreements with customers" which included a list of purported customers (Ex. 1 (*White* Complaint) at ¶ 19; Ex. 2 (*Duarte* Complaint) at ¶ 20) and statements by the Company "tout[ing] [] [its] approach to medical imaging by developing a novel x-ray source, and tout[ing] that Nano-X's Nanox System would improve upon existing medical imaging solutions."  Ex. 1 (*White* Complaint) at ¶ 20; Ex. 2 (*Duarte* Complaint) at ¶ 21.  Below are examples of the language from the IPO Registration Statement that the *White* and *Duarte* actions allege was false and/or misleading:

> *MSaaS Agreements*
>
> ***We have entered into eight MSaaS Agreements to deploy 4,520 Nanox Systems in eleven regions as described in the table below.*** Under the terms of each agreement, we grant the other party a limited, non-transferable, exclusive, sublicensable right to access and operate the Nanox System in the region indicated for such party. ***We undertake to provide the specified number of Nanox Systems to each entity as indicated in the table below based on agreed shipment schedules, subject to local regulatory approval and material compliance with acceptance test protocol (the "conditions precedent").***

---

[2] All references to "Ex." are to exhibits to the Montenegro Decl.

***

> As a first step to producing a new class of affordable medical imaging systems, *we have focused on identifying and developing a novel X-ray source. . .*

Ex. 1 (*White* Complaint) at ¶ 19; Ex. 2 (*Duarte* Complaint) at ¶ 20. (emphasis in original).

Similarly, both actions provide the same exact four reasons detailing why the statements in the IPO Registration Statement were materially false and/or misleading:

> Defendants made false and/or misleading statements and/or failed to disclose that: (i) Nano-X's commercial agreements and its customers were fabricated; (ii) Nano-X's statements regarding its "novel" Nanox System were misleading as the Company never provided data comparing its images with images from competitors' machines; (iii) Nano-X's submission to the U.S. Food and Drug Administration ("FDA") admitted the Nanox System was not original; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

Ex. 1 (*White* Complaint) at ¶ 21; Ex. 2 (*Duarte* Complaint) at ¶ 22.

With respect to the Company's claim that its product was "novel," as the *White* and *Duarte* complaints make clear, they allege that the Company's statements were materially false and/or misleading because the Company did not provide any data to substantiate its claims of novelty and because Nano-X's FDA application submission admitted that the Company's product was not novel.

The sole corrective disclosure in the *White* and *Duarte* actions is a report published on **September 15, 2020** by Citron Research ("Citron Report"). Ex. 1 (*White* Complaint) at ¶ 22; Ex. 2 (*Duarte* Complaint) at ¶ 23. As both complaints state, "[t]he Citron Report revealed that the Company's claims about its customers with commercial agreements were false." Ex. 1 (*White* Complaint) at ¶ 23; Ex. 2 (*Duarte* Complaint) at ¶ 24. The complaints also set forth the same exact examples of purportedly fake customers of Nano-X, per the Citron Report. Ex. 1 (*White* Complaint) at ¶ 23; Ex. 2 (*Duarte* Complaint) at ¶ 24. The complaints also state that the Citron Report "discussed how Nano-X has not published any data comparing images from its machines

5

with other x-ray machines and that Nano-X's statements that it was creating a novel solution to medical imaging was false . . ."  Ex. 1 (*White* Complaint) at ¶ 24; Ex. 2 (*Duarte* Complaint) at ¶ 25.  Finally, both complaints also state that the Citron Report "noted and explained that the Company's 510(k) application to the FDA for the Nanox System was an admission that the Company did not have a novel product."  Ex. 1 (*White* Complaint) at ¶ 25; Ex. 2 (*Duarte* Complaint) at ¶ 26.

> **B.     The *McLaughlin* Action Asserts Fundamentally Different Claims Than the *Duarte* and *White* Actions, Alleges Several Sources of Misrepresentations, Covers a Different Class Period and Alleges Different Corrective Disclosures**

The amended complaint in the *McLaughlin* action was filed on April 12, 2022 against Defendants Nano-X Imaging, Ran Poliakine and Itzhak Maayan.  Ex. 3 (*McLaughlin* Complaint) at ¶¶ 16-18.  The class period of the *McLaughlin* action is August 21, 2020 to November 18, 2021, both days inclusive.  *Id.* at ¶ 1.  As the *McLaughlin* complaint makes clear, the nature of the action is that "[s]ince its first initial public offering ("IPO"), the Company has persisted in its claim that it can manufacture an X-Ray system (the Nanox.ARC) that is comparable to the computerized tomography ("CT") scanner *and at a significantly lower cost,* thereby revolutionizing the medical imagining market."  *Id.* at ¶ 3.  The alleged misstatements in the *McLaughlin* action are found in *13 different sources*, including the IPO Registration Statement, the Secondary Public Offering Registration Statement, investor presentations, earnings calls and the Company's SEC Form 20-F for fiscal year ended December 31, 2020.  *Id.* at ¶¶ 65-96.

All alleged misrepresentations in the *McLaughlin* complaint focus on the Company's statements that it could manufacture a product with the same functionalities as the CT scanner and that it could do it for a lower cost.  Below are examples of the types of alleged misrepresentations covering these two categories:

> Our X-ray source is based on a novel digital microelectromechanical system ("MEMs") semiconductor cathode that **we believe can achieve the same functionalities as legacy X-ray analog cathodes, while allowing for lower-cost production than existing medical imaging systems.**
>
> ***
>
> We currently estimate the aggregate cost of purchasing and assembling the components of the Nanox.ARC **will be approximately $8,000 to $12,000 per unit**, assuming at least 15,000 Nanox.ARC units will be manufactured. We believe this will enable us to offer the Nanox System at a **substantially lower cost than the cost of existing medical imaging systems based on analog X-ray sources.**

*Id.* at ¶ 4. (emphasis in original).

As the *McLaughlin* complaint alleges, statements like the aforementioned "were materially false and/or misleading because Nano-X failed to disclose that: (i) the actual costs for assembling the Nanox.ARC was likely to be at least $40,000 to $50,000 per unit, e.g., upwards of 4-5 times greater than represented; and (ii) the Nanox.ARC was not comparable to the existing CT imaging, since it was unable to provide the same level of high resolution, the gold standard for medical imaging devices. As a result, the prospective marketability and profitability of the Nanox.ARC, if any, was far more uncertain than investors were led to believe." *Id.* at ¶ 5. Accordingly, the crux of the claims in *McLaughlin* is that the Nanox.ARC lacked competitiveness due to the fact that it did not have the same functionality as the CT scanner, much less at the lower cost represented by Defendants.

The corrective disclosures in the *McLaughlin* action are in **November 2021**—14 months after the corrective disclosure in the *White* and *Duarte* actions: (1) the November 17, 2021 announcement by the Company that it had received a subpoena from the Securities and Exchange Commission ("SEC") requesting that the Company provide documents and other information relating to the development cost of the Nanox.ARC prototype, as well as the Company's estimate for the cost of assembling the final product at scale (*id.* at ¶¶ 97-98); and (2) a November 18, 2021,

7

analyst report commenting on the SEC subpoena and highlighting the Company's claims of a $10,000 system cost at mass production. *Id.* at ¶ 100.

## III.    LEGAL STANDARD

Fed. R. Civ. P. 42(a) states that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions or issue any other orders to avoid unnecessary cost or delay."  Rule 42(a)'s language demonstrates the Court's discretion:  The Court "may" consolidate the actions; consolidation is not mandatory.  In addition, the Rule incorporates flexibility:  the court "may" consolidate or issue "any other order" to avoid unnecessary expense or delay.  Case law affirms that this standard is highly discretionary.  Under Rule 42(a), "a trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Syracuse Inn Syracuse,* No. 5:22-CV-0396 (GLS/ML), 2022 WL 1813914, at *2 (N.D.N.Y. June 2, 2022) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *see also* Wright & Miller, Consolidation—Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.) ("district court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual").

Moreover, common questions of law or fact do not necessitate consolidation.  "Although such common issues are a prerequisite to consolidation, there mere existence of these issues does not require" consolidation. *Kelly v. Kelly*, 911 F. Supp. 66, 69 (N.D.N.Y. 1996).  Once a common question of law and fact has been established, "the decision to consolidate is left to the sound discretion of the district court." *M&T Mortg. Corp. v. White,* No. CV-04-4775 (WFK)(VVP), 2012 WL 715896, at *1 (E.D.N.Y. Feb. 14, 2012) (citing *Celotex Corp.*, 899 F.2d at 1284-85)). In deciding whether to consolidate actions under Rule 42(a), the court must determine "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available

8

judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Celotex Corp.,* 899 F.2d at 1285. These factors require the district court judge to examine the facts and circumstances of each individual case, thus making the decision "highly contextual." Wright & Miller § 2383.

**IV.     ARGUMENT: THE *WHITE* AND *DUARTE* ACTIONS AND THE *MCLAUGHLIN* ACTION INVOLVE MATERIALLY DIFFERENT CLAIMS AND DIFFERENT QUESTIONS OF LAW AND FACT**

The claims in the *White* and *Duarte* actions are fundamentally different from the claims in *McLaughlin.* In *White* and *Duarte* the claims are identical, *see supra* 4-5. The *White* and *Duarte* actions are centrally focused on the alleged novelty. The claims in the *White* and *Duarte* actions are focused on whether Nano-X betrayed the fact that the Nanox.ARC is not a "novel" product because it applied for FDA approval with an application (the 510(K)) which applies specifically to products that are not novel and is used by manufacturers who seek easy approval of their products because they are substantially equivalent to products already legally in the market. Ex. 1 (*White* Complaint) at ¶ 21; Ex. 2 (*Duarte* Complaint) at ¶ 22. The *White* and *Duarte* actions also allege that statements regarding the novelty of the Nanox.ARC are false because the Company has been unable to substantiate as much by providing data. Finally, the *White* and *Duarte* actions also involve a claim that the Company fabricated customer agreements. In sum, the key questions in the *White* and *Duarte* actions are whether the Nanox.ARC is a novel product and whether it had entered into development agreements with customers at the time. If they make it past a motion to dismiss, they will be successful at trial only if they are able to prove that despite Nano-X's statements to the contrary, the Nanox.ARC is not a novel product or was not the subject of then-existing agreements with customers.

9

On the other hand, the claims in the *McLaughlin* action are focused on the alleged competitive marketability and customer attractiveness of the Nanox.ARC.  As the allegations in the *McLaughlin* complaint make clear, the alleged false and/or misleading statements in the *McLaughlin* action center around the Company's representations that the Nanox.ARC can recreate the same high level of resolution as the CT scanner—the golden standard for medical imaging devices—at a fraction of the cost.  Ex. 3 (*McLaughlin* Complaint) at ¶ 5.  The *McLaughlin* action alleges that claims that the Nanox.ARC is competitive (in image resolution and cost) to the CT scanner are false based on the Company's descriptions of its product and the known costs of the parts necessary to assemble the Nanox.ARC (*id.* at ¶¶ 48-62), not, as the *White* and *Duarte* plaintiffs allege, because the Company has not provided data to substantiate its claims of having created a "novel" product.  Ex. 1 (*White* Complaint) at ¶ 21; Ex. 2 (*Duarte* Complaint) at ¶ 22.  Additionally, the *McLaughlin* action does not involve the Company's statements regarding commercial agreements.  In sum, the key question in the *McLaughlin* action is the alleged competitive marketability of the Nanox.ARC—not its purported novelty, nor the Company's commercial agreements, or lack thereof.

In a recasting of the claims in *McLaughlin,* Defendants argue that there is overlap between the *White* and *Duarte* actions and the *McLaughlin* action because "the amended complaint in the *McLaughlin* action alleges that Nano-X's July 30, 2020 Registration Statement included misrepresentations with respect to cost estimates of its X-ray imaging product *under the theory that the product did not concern "novel" technology* and was not comparable to existing CT imaging." Defs.' Mot. at 8. (emphasis supplied).  Not so.  The *McLaughlin* action does not concern the novelty or lack thereof of the Nanox.ARC product.  While the claims in *White* and *Duarte* focus on whether the Nano-X product was in fact "novel," and whether the Company's

10

submission to the FDA was for a "novel" product, *McLaughlin* is focused on whether the product

was, as the Company represented, far less costly than competitive products, while providing the

same capacity as those products.  Stated otherwise, whether the Nanox.ARC is "novel" or not has

nothing to do with *McLaughlin's* core claims, *i.e.:* misrepresentations concerning the

Nanox.ARC's technological comparability to the CT scanner and the Company's cost estimates

for assemblage of the product.

While the *McLaughlin* amended complaint references the term "novel" it is merely cited

for background and/or descriptive purposes (*see, e.g.,* Ex. 3 (*McLaughlin* Complaint) at ¶¶ 2, 9,

21, 26, 51, 57) or because the word is found in statements at issue, but that otherwise focus on the

misleading alleged competitiveness of the product.  *See, e.g., id.* at ¶¶ 4, 66, 84.

For example, in the *White* and *Duarte* complaints the "novel" claim is the focus of the

alleged misstatements:

> The Registration Statement touted the Company's approach to medical imaging by developing a novel x-ray source and that Nano-X's Nanox System would improve upon existing medical imaging solutions, stating in relevant part:
>
> As a first step to producing a new class of affordable medical imaging systems, *we have focused on identifying and developing a novel X-ray source. . .*

Ex. 1 (*White* Complaint) at ¶ 20; Ex. 2 (*Duarte* Complaint) at ¶ 21. (emphasis in original).

To the contrary, in the *McLaughlin* complaint, "novel" is merely descriptive, but the focus

is centered on the claims that the Nanox.ARC could replace the CT scanner, and, at a lower cost:

> Throughout the Class Period, Defendants touted to investors the capabilities and cost of its Nanox.ARC product, including:
>
> Our X-ray source is based on a novel digital microelectromechanical system ("MEMs") semiconductor cathode that **we believe can achieve the same functionalities as legacy X-ray analog cathodes, while allowing for lower-cost production than existing medical imaging systems.**

Ex. 3 (*McLaughlin* Complaint) at ¶ 4. (emphasis original).

11

Finally, while the *White* and *Duarte* actions focus on misrepresentations in the IPO Registration Statement only, the *McLaughlin* action sets forth approximately 13 different sources of misrepresentations. *See id*. at ¶¶ 65-96. Even in connection with the one overlapping source of misrepresentation, the IPO Registration Statement, while the *White* and *Duarte* actions cite to 11 different passages (Ex. 1 (*White* Complaint) at ¶¶ 19-20; Ex. 2 (*Duarte* Complaint) at ¶¶ 20-21) the *McLaughlin* action cites to six (Ex. 3 (McLaughlin Complaint) at ¶ 66)—there is overlap of only two. And, as discussed *supra* 4-6, 11, while in the *White* and *Duarte* complaints the focus given by the plaintiffs in the cited passages is to the claims of a "novel" product, the focus given to the passages in the *McLaughlin* complaint is to the claims by the Company that the Nanox.ARC could attain market competitiveness.

## V.    ARGUMENT: THE *WHITE* AND *DUARTE* ACTION AND THE *MCLAUGHLIN* ACTION HAVE LIMITED TEMPORAL AND FACTUAL OVERLAP

As noted *supra* 4-5, the *White* and *Duarte* actions involve a three-and-a-half-week class period (August 21, 2020 to September 15, 2020) versus *McLaughlin's* over 64 weeks class period (August 21, 2020 to November 18, 2021). Moreover, in addition to their claims centered around the "novelty" of the Nanox.ARC, the *White* and *Duarte* actions have a claim concerning the Company's fabrication of commercial agreements with its customers. Ex. 1 (*White* Complaint) at ¶ 21; Ex. 2 (*Duarte* Complaint) at ¶ 22. This claim is categorically not a claim in the *McLaughlin* action, and Defendants do not argue otherwise.

Furthermore, the cases have different corrective disclosures. As discussed *supra* 5-6, the corrective disclosure in the *White* and *Duarte* actions is the September 15, 2020 Citron Report—three weeks after commencement of the class period in those action. As those complaints point out, the Citron Report focused on alleged misleading statements regarding the Company's commercial distribution agreements (for its yet to be approved product), discussed how the

12

Company had failed to publish any data comparing the Nanox.ARC with other x-ray machines and that the Company's 501(K) application to the FDA was an admission by Nano-X that its product was not "novel." *The Citron Report is not alleged as a corrective disclosure in the McLaughlin amended complaint, nor is it mentioned.* The Citron Report said nothing concerning the Nanox.ARC's capabilities vis a vis the CT scanner already on the market, nor the Company's ability to manufacture a product able to reproduce CT quality imaging at a much lower cost. In contrast, as discussed *supra* 7-8, the corrective disclosures in the *McLaughlin* action relate to the SEC subpoena for documents about the development costs of assembling the Nanox.ARC. The subpoena as disclosed did not concern whether the product was "novel," or whether Nano-X's commercial agreements were fabricated.

## VI.   ARGUMENT:  THE *WHITE* AND *DUARTE* ACTION AND THE *MCLAUGHLIN* ACTION HAVE VASTLY DIFFERENT PLAINTIFFS

The plaintiffs in the actions are vastly different. There are two potential lead plaintiffs in the *White* action (the *White* plaintiffs' motion for consolidation and lead is unopposed yet pending since 2020). Ex. 4 (Exhibit B to Motion for Consolidation and Lead). *White* plaintiff Ko purchased and sold 15,622 shares on September 11, 2020. *Id.* at 1. By the end of the *White* and *Duarte* class period (September 15, 2020) he retained 15,623 shares, but sold the remainder of the shares during the 90-day lookback period, which means that he retained no shares into the *McLaughlin* class period. *Id.* at 2. Accordingly, Ko could not serve as a class representative for the *McLaughlin* claims. Meanwhile, *White* plaintiff Jolteus purchased a total of 15,600 shares during the *White* and *Duarte* class period and sold most of his shares immediately after the Citron Report. *Id.* This also weighs against consolidation, since the fact that Jolteus purchased much earlier in the longer class period (the *McLaughlin* class period of August 21, 2020 to November 18, 2021) may cast doubt on whether he can pursue claims for misleading statements issued much later during the

13

*McLaughlin* class period. Moreover, the *McLaughlin* lead plaintiff, Davian Holdings, purchased 3,160 shares (Ex. 5 (Exhibit A to Motion for Lead)) in June 2021—long after the end of the *White/Duarte* class period, which means it would be unable to pursue the *White/Duarte* claims.[3] In short, due to these differences, the plaintiffs in the respective actions, *White/Duarte* and *McLaughlin*, cannot serve as class representatives for the other's claims.

## VII.   ARGUMENT:  DISCOVERY AND THE ISSUES TO BE TRIED IN THE *MCLAUGHLIN* ACTION WILL BE VASTLY DIFFERRENT AND FOR A BROADER TIME PERIOD THAN THE DISCOVERY NECESSARY TO PROSECUTE THE *WHITE/DUARTE* ACTIONS

The *McLaughlin* plaintiffs will need to take voluminous discovery concerning the action's claims at issue and for a discovery period spanning more than 15 months (the *McLaughlin* class period).  By contrast, the *White* and *Duarte* plaintiffs expect to have a much shorter discovery period with discovery focused on vastly different claims, as discussed *supra* 4-6. The convenience to Defendants and any savings of time that might be realized as a result of consolidation are dwarfed by the inefficiency and expense that will fall upon the *White* and *Duarte* plaintiffs if they are required to try their case along with the *McLaughlin* plaintiffs and participate in discovery proceedings that relate to a time period and claims that do not form part of their case.  *See Stein, Hall & Co. v. Scindia Steam Nav. Co.,* 264 F.Supp. 499 (S.D.N.Y. 1967); *Arroyo v. Chardon,* 90 F.R.D. 603 (D. P.R. 1981) (cases would not be consolidated where possible prejudice due to likelihood of confusion in minds of jurors because of similarity of issues alleged in complaints and possibility of different facts in each case outweighed benefits of any possible convenience or economy to be obtained from consolidation).

---

[3] To be clear, despite purchasing after issuance of the IPO Registration statements, the *McLaughlin* Lead Plaintiff can represent claims relating to the alleged competitive marketability of the Nanox.ARC—going back to statements made in the IPO Registration Stattement—since these misrepresentations started back then and continued for the next 64 weeks, until the corrective disclosures in November 2021.

## VIII.   CONCLUSION

For the foregoing reasons, the *White/Duarte* actions should not be consolidated with the *McLaughlin* Action.

Dated:  June 17, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Veronica V. Montenegro*
Veronica V. Montenegro
Jeremy A. Lieberman
Marc I. Gross
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
vvmontenegro@pomlaw.com
jalieberman@pomlaw.com
migross@pomlaw.com

*Counsel for Davian Holdings Limited and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Davian Holdings Limited*

LEVI & KORSINSKY, LLP
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: aapton@zlk.com

*Lead Counsel for Edward Ko, Derson O. Jolteus, (White Plaintiffs) and [Proposed] Lead Counsel for the Class*

15