UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MATTHEW WHITE, *individually and on behalf of all* :
*others similarly situated,*                                       :
                                                                   :
                                   Plaintiff,          :          REPORT AND
                                                                   :          RECOMMENDATION
          -against-                                       :
                                                                   :          20-CV-4355 (WFK)(MMH)
NANO-X IMAGING LTD., RAN POLIAKINE, and :
ITZHAK MAAYAN,                                          :
                                                                   :
                                   Defendants.       :
                                                                   :
                                                                   :
-------------------------------------------------------------------x
-------------------------------------------------------------------x
DAVID DUARTE, *individually and on behalf of all* :
*others similarly situated,*                                       :
                                                                   :
                                   Plaintiff,          :          REPORT AND
                                                                   :          RECOMMENDATION
          -against-                                       :
                                                                   :          20-CV-4528 (RRM)(MMH)
NANO-X IMAGING LTD., RAN POLIAKINE, and :
ITZHAK MAAYAN,                                          :
                                   Defendants.       :
                                                                   :
                                                                   :
                                                                   :
-------------------------------------------------------------------x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Matthew White and David Duarte, on behalf of themselves and others similarly

situated who purchased Nano-X securities between August 21, 2020 and September 15, 2020,

brought two separate actions in this district against Nano-X Imaging Ltd. ("Nano-X"), Ran

Poliakine, and Itzhak Maayan (collectively "Defendants"), alleging violations of the Securities

Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation

Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq*. (the "PSLRA"). *White v. Nano-X Imaging Ltd. et*

*al.*, 20-CV-4355 (WFK)(MMH) (E.D.N.Y.) ("*White*"); *Duarte v. Nano-X Imaging Ltd. et al.*, 20-CV-4528 (RRM)(MMH) (E.D.N.Y.) ("*Duarte*").[1]

Five movants initially requested consolidation of the actions, pursuant to Federal Rule of Civil Procedure ("Rule") 42, and appointment as lead plaintiff and of their respective attorneys as lead counsel, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA.  Four of the five movants have withdrawn their motions or filed notices of their non-opposition.  Before the Court is the remaining motion of Edward Ko ("Ko") and Derson O. Jolteus ("Jolteus") (collectively "Movants") to consolidate the two actions, to be appointed co-lead plaintiffs of the consolidated class, and to appoint their counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), as lead counsel.  (Ko & Jolteus Mot. ("Mot."), ECF No. 12.)  The Honorable William F. Kuntz, II referred the motions to the undersigned for a report and recommendation. (Sept. 1, 2021 Order, ECF No. 32.)  For the reasons stated below, the Court respectfully recommends that Movants' motion be **granted** and that the remaining motions be **denied as moot**.

## I.     BACKGROUND

### A.  Factual Allegations[2]

As alleged, Nano-X develops and produces x-ray source technology for the medical imaging industry.  (Compl., ECF No. 1 ¶ 7.)  The "Nanox System," Nano-X's "x-ray imaging solution," is designed to improve the accessibility and affordability of early-detection of diseases.

---

[1] Citations to pleadings or other ECF documents are to *White* unless otherwise indicated.  All citations to documents filed on ECF refer to the ECF pagination "___ of ___" unless otherwise indicated.

[2] The factual allegations in the *White* and *Duarte* complaints are nearly verbatim.

(*Id.* ¶ 15.)  Poliakine and Maayan serve as Nano-X's Chief Executive Officer and Chief Financial

Officer, respectively.  (*Id.* ¶¶ 8–9.)

According to the Complaint, Nano-X filed a registration statement with the SEC on July

30, 2020 that Poliakine and Maayan signed, and Nano-X securities began trading on NASDAQ on

August 21, 2020.  (*Id.* ¶¶ 16–17.)  Plaintiff purchased Nano-X's securities in or about September

2020.  (*Id.* ¶¶ 1, 6.)  However, as alleged, Defendants made several materially false and/or

misleading misstatements or omissions in the registration statement regarding Nano-X's business

development and the Nanox System's capabilities.  (*Id.* ¶¶ 19–20.)  Specifically, the Complaint

alleges that Defendants misrepresented or failed to disclose "adverse facts pertaining to [Nano-

X's] business, operational and financial results," including that:

> (1) Nano-X's commercial agreements and its customers were fabricated; (2) Nano-
> X's statements regarding its "novel" Nanox System were misleading as the
> Company never provided data comparing its images with images from competitors'
> machines; (3) Nano-X's submission to the U.S. Food and Drug Administration . . .
> admitted the Nanox System was not original; and (4) as a result, Defendants' public
> statements were materially false and/or misleading at all relevant times.

(*Id.* ¶ 21.)  After a public report refuted several of Nano-X's claims, there was a "precipitous

decline in the market value of [Nano-X's] securities," financially damaging both plaintiffs and

other similarly situated investors.  (*See id.* ¶¶ 22–27.)

## B. Procedural History

White filed his Complaint on September 16, 2020, seeking to recover compensable

damages caused by Defendants' alleged violations of the Exchange Act.  (*See generally* Compl.,

ECF No. 1.)  On the same day, notice was posted on *Business Wire* publicizing the pendency of

the *White* action.  (*See* Hopkins Decl., Ex. C, ECF No. 14-3.)[3]  Days later, Duarte filed his

---

[3] "Hopkins Decl." refers to the Declaration of Shannon L. Hopkins submitted in support of
Movants' motion, and the accompanying exhibits: (1) Movants' PSLRA certifications attesting to

Complaint, on September 24, 2020.  (*See generally Duarte* Compl., ECF No. 1.)  On October 21, 2020, Defendants entered into stipulations with each plaintiff to: (1) authorize service of process on counsel for Defendants: (2) extend the time for Defendants to answer the Complaint until after the appointment of a lead plaintiff; and (3) provide that within 14 days of the appointment of lead plaintiff and lead counsel, the lead plaintiff and Defendants shall meet and confer and propose to the Court the filing of an amended complaint.  (Stip., ECF No. 6.; *Duarte* Stip., ECF No. 7.)

Subsequently, on November 9, 2020, Defendants asked the Court to designate *White* as a case related to *Duarte*, pursuant to Rule 50.3.1(d) of the Eastern District's Guidelines for the Division of Business Among District Judges.  (Ltr., ECF No. 9; *Duarte* Ltr., ECF No. 10.)

## C.  The Lead Plaintiff and Consolidation Motions

Before the Court could rule on the related case request, on November 16, 2020, five groups of putative class members moved to consolidate *White* and *Duarte*, to be appointed lead plaintiff(s), and for the Court to approve their chosen counsel as lead counsel: (1) Mohammed Ishaque and his counsel, The Rosen Law Firm, P.A. (*see* Ishaque Mot., ECF No. 10); (2) Movants and their counsel, Levi & Korsinsky (*see* Mot., ECF No. 12); (3) Jacob Soto and Jason Maine and their counsel, Glancy Prongay & Murray LLP (*see* Soto & Maine Mot., ECF No. 15); (4) Dr. Melvyn M. Okeon and Dr. Robert E. Clark and their counsel, Robbins Geller Rudman & Dowd LLP (*see* Okeon & Clark Mot., ECF No. 18); and (5) Jinwen Yang and his counsel, Pomerantz LLP (*see* Yang Mot., ECF No. 21).

---

their transactions in Nano-X securities (Ex. A, ECF No. 14-1); (2) loss charts reflecting Movants' alleged losses as a result of their transactions in Nano-X securities (Ex. B, ECF No. 14-2); a press release published on *Business Wire* on September 16, 2020 announcing the pendency of *White* (Ex. C, ECF No. 14-3); (4) Movants' joint declaration (Ex. D, ECF No. 14-4); and (5) the firm resume of Levi & Korsinsky (Ex. E, ECF No. 14-5).

Subsequently, four movants withdrew their motions or otherwise expressed non-opposition to Movants' application.[4]  (*See* Yang Notice, ECF No. 25; Soto & Maine Notice, ECF No. 26; Ishaque Notice, ECF No. 28; Okeon & Clark Notice, ECF No. 29.)  Movants also filed a notice on December 7, 2020 confirming that their lead plaintiff and consolidation application was the only application remaining.  (Movs.' Reply, ECF No. 30.)

Pending transfer to a new district judge, the lead plaintiff and consolidation motions were terminated.  (*See* June 23, 2021 Order.)  On July 12, 2021, the case was transferred to the Honorable William F. Kuntz, II.  In response to Movants' request, Judge Kuntz restored the previously filed motions and referred them to me for a report and recommendation.  (Movs.' Ltr., ECF No. 31; *see* Sept. 1, 2021 Order, ECF No. 32.)

## II.    **DISCUSSION**

### A. **Consolidation**

Federal Rule of Civil Procedure 42(a)(2) provides that a court may consolidate actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a)(2); *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 393–94 (S.D.N.Y. 2014) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).  "The district court has broad discretion to determine whether consolidation is appropriate."  *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 343 (E.D.N.Y. 2018) (citing *Johnson*, 899 F.2d at 1285).  Consolidation is a "valuable and important tool of judicial administration" that should be "invoked to expedite trial and eliminate unnecessary repetition and confusion.'"  *Reitan*, 68 F. Supp. 3d at 394 (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted)).

---

[4] Movants also filed a memorandum in opposition to the other lead plaintiff applications on November 30, 2020, asserting that Movants had the largest financial interest in the litigation and should be approved as lead plaintiffs.  (Movs.' Opp'n Mem., ECF No. 27.)

Accordingly, courts consider the following factors to determine whether consolidation is appropriate:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Brady*, 324 F. Supp. 3d at 343 (citing *Johnson*, 899 F.2d at 1285 (alterations in the original)).

The Court finds that consolidation is warranted because both *White* and *Duarte* involve common questions of law and fact.  Notably, both complaints allege the same causes of action against the same Defendants based on identical alleged misstatements and/or omissions related to the Nanox System and included in the same SEC registration statement.  (*See generally* Compl., ECF No. 1; *Duarte* Compl., ECF No. 1.)  "Absent prejudice to the defendants, '[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports[.]'"  *Parot v. Clarivate Plc*, No. 22-CV-1371 (ARR)(RLM), 2022 WL 1568735, at *3 (E.D.N.Y. May 18, 2022) (citing *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 204 (E.D.N.Y. 2019)); *see also In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CIV-4420 (PAE), 2020 WL 5548856, at *3 (S.D.N.Y. Sept. 16, 2020) (approving consolidation of two actions where "the majority of each Complaint contains the exact same allegations, generally verbatim").  The Court finds no prejudice here, where Defendants can efficiently respond to the identical allegations in a consolidated action.  *Reitan*, 68 F. Supp. 3d at 394.

Additionally, consolidation is appropriate where, as here, all current and former movants have stated their support for consolidation and no defendants have opposed it.[5] *See Parot*, 2022 WL 1568735, at *4 (approving consolidation where all movants expressed their support and no defendants oppose); *Brady*, 324 F. Supp. 3d at 343–44 (same); *Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 82 (E.D.N.Y. 2011) (noting that defendants' lack of objection to consolidation bolsters finding that consolidation would not prejudice defendants).

For the reasons above, the cases present common questions of law and fact and consolidation would serve the interests of judicial economy without prejudice to Defendants. Accordingly, the Court respectfully recommends that Movants' motion to consolidate be granted.

## B. Appointment of Lead Plaintiff

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). Congress, in enacting the PSLRA, sought to "prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co. Ltd.*, No. 11-CV-7133 (JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (quotations omitted). Even when a motion to appoint lead plaintiff is unopposed, "the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018).

---

[5] In fact, in letters to the Court in *White* and *Duarte* regarding a third action against Defendants, *McLaughlin v. Nano-X Imaging Ltd. et al.*, 21-CV-5517 (RPK)(PK), Defendants expressed their view that *White* and *Duarte* are related. (Defs.' Dec. 12, 2021 Ltr., ECF No. 33 at 2.)

In determining which individual or group is best suited to serve as lead plaintiff, courts adopt a two-step inquiry. *Darish v. N. Dynasty Minerals. Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012). First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that "(aa) has either filed the complaint or made a motion in response to a notice. . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, it may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

1. Notice and Timely Filing

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). Even though none of the parties have objected to the adequacy of the notice in this case, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice

comports with the objectives of the PSLRA." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005)).

The Court finds that the notice meets the PSLRA's requirements.  The notice was filed on September 16, 2020, the same date as the *White* Complaint, in *Business Wire*.  (*See* Hopkins Decl., Ex. C, ECF No. 14-3 at 2.)  The notice summarizes the allegations in the Complaint, defines the relevant class period, and advises any potential lead plaintiffs to "move the Court no later than November 16, 2020." (*Id.*)  Courts in this circuit frequently find that publication of the required notice in *Business Wire* serves as sufficient notice for the purposes of the PSLRA. *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (noting that *Business Wire* is "a widely-circulated, national, business-[oriented] news reporting wire service."); *Chitturi*, 2020 WL 8225336, at *3 ("Business Wire is a suitable vehicle for meeting the statutory requirement that notice be published.").  Further, Movants filed the instant motion on November 16, 2020, in response to the notice, by the relevant deadline.  15 U.S.C. § 78u-4(a)(3)(A)(i); *Chitturi*, 2020 WL 8225336, at *3.

Accordingly, the Court finds that publication of the notice is sufficient, and that Movants' application is timely.

2.  <u>Largest Financial Interest</u>

The second requirement to support the most adequate plaintiff presumption is whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  While the PSLRA does not delineate the

factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Trust for Advised Portfolios,* No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022); *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112 (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010)).  The most important of these factors, however, is the fourth factor—"the approximate loss suffered by the movant." *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Movants allege that: (1) they purchased a total of 47,745 shares during the class period; (2) they netted 23,224 shares during the class period; (3) the net funds expended during the class period totaled $1,254,858.89; and (4) they incurred losses of approximately $385,166.98 as a result of Defendants' alleged misrepresentations and/or omissions.  (Movs.' Opp'n Mem., ECF No. 27 at 4; *see also* Hopkins Decl. Ex. B, ECF No. 14-2 at 2–4 (Movants' respective loss charts).)[6] Movants also state that they know of no other class member with a larger financial interest that is seeking appointment as lead plaintiff.  (Ko & Jolteus Mem. ("Mem."), ECF No. 13 at 11.)  Such assertions of financial loss are sufficient to appoint a movant as lead plaintiff at this stage when the motion is unopposed and no other plaintiff demonstrates a larger financial stake.  *See Yang*, 2022 WL 970772, at *2–3.

---

[6] In their memorandum in support of their motion for appointment as lead plaintiff, Movants cite an approximate loss suffered of $385,166.**97**.  (Mem., ECF No. 13 at 11.)

Accordingly, the Court finds that Movants have the largest financial interest in the litigation of any putative lead plaintiff.

3. Rule 23 Requirements

The Court must also determine whether Movants "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6. "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Yang*, 2022 WL 970772, at *3 (quoting *Chitturi*, 2020 WL 8225336, at *5); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (noting a requirement of "only . . . a preliminary showing of typicality and adequacy at this stage of the litigation") (internal quotations omitted).

a. *Typicality*

"Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Hebron Tech. Co.*, 2020 WL 5548856, at *5 (internal quotations omitted). Ko and Jolteus satisfy this requirement because they allege, like all members of the putative class, that they purchased Nano-X shares during the proposed class period and that Defendants' material misstatements and omissions concerning the Nanox System caused the share price to decline sharply, financially damaging them and other investors. (Mem., ECF No. 13 at 12–13.) "That 'is all that is required to demonstrate typicality at this stage.'" *In re Hebron Tech. Co.*, 2020 WL 5548856, at *5 (quoting *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

b. *Adequacy*

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff] and class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Yang*, 2022 WL 970772, at *4 (quoting *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011), *report and recommendation adopted*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)).

Movants also satisfy the adequacy requirement.  First, Movants' selected counsel, Levi & Korsinsky, has demonstrated that it is qualified and has substantial experience litigating securities fraud cases and serving as lead counsel.  (*See* Hopkins Decl., Ex. E, ECF No. 14-5 at 4–6 (listing multiple cases in which Levi & Korsinsky were appointed lead counsel in securities fraud litigations).)

Second, there is no indication that Ko and Jolteus have interests that are antagonistic to other potential class members.  (*See* Mem., ECF No. 13 at 13.)  As discussed above, Movants' interests are clearly aligned with the interests of the class, as they purchased Nano-X shares during the class period, like all putative class members.  (*Id.* at 12–13.)  Thus, there is no factual basis on which to conclude that their interests are antagonistic to the other class members.  *See In re Hebron Tech. Co.*, 2020 WL 5548856, at *6.

Third, Movants have indicated their willingness to vigorously advocate on behalf of the members of the putative class.  (*See* Hopkins Decl., Ex. D, ECF No. 14-4 ¶ 11.)  Movants are sophisticated investors who, after sustaining significant financial losses, considered their duties as lead plaintiffs and are willing to accept them.  (*Id.* ¶¶ 3–4, 9, 11–13.)  Because they have the largest

12

financial stake in the outcome of this litigation, they will be motivated to vigorously pursue recovery on behalf of all class members. *Atanasio*, 331 F.R.D. at 30.

Therefore, because Ko and Jolteus satisfy the PSLRA Rule 23 requirements, they are entitled to the PSLRA presumption as the most adequate lead plaintiff. *Id.*

### 4. Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Emerson v. Mut. Fund Series Tr.*, No. 17-CV-2565 (ADS)(GRB), 2018 WL 10667922, at *1 (E.D.N.Y. Jan. 8, 2018). No other purported class member has offered proof that Ko and Jolteus do not meet the PSLRA Rule 23 requirements of typicality and adequacy. Additionally, no other member of the purported class opposes their motion, as the other movants have withdrawn their motions for appointment as lead plaintiff or filed subsequent notices of non-opposition to Movants' application. (*See* Yang Notice, ECF No. 25 (indicating Yang's non-opposition)); Soto & Maine Notice, ECF No. 26 (indicating Soto and Maine's non-opposition); Ishaque Notice, ECF No. 28 (indicating Ishaque's non-opposition); Okeon & Clark Notice, ECF No. 29 (withdrawing Okeon and Clark's application).)

In sum, Movants have satisfied all three prongs of the PSLRA's presumptive requirements for co-lead plaintiffs and no other purported class members have rebutted the presumption. Thus, the Court respectfully recommends appointing Ko and Jolteus as co-lead plaintiffs in the consolidated action. *See Emerson*, 2018 WL 10667922, at *2.

### C. Approval of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The lead plaintiff's right to select and retain counsel is not absolute." *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. CV-08-1418 (LDW)(ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (citations omitted). However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Rauch*, 378 F. Supp. 3d at 211; *see also Brady*, 324 F. Supp. 3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (internal quotations omitted). "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience." *Darish*, 2021 WL 1026567, at *8; *Reitan*, 68 F. Supp. 3d at 401 ("When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience."); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (approving lead counsel selection where the firm had "extensive experience in prosecuting securities fraud actions.").

Movants argue that Levi & Korsinsky "possesses adequate experience in securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors . . . ." (Mem., ECF No. 13 at 14.) In support of the application, Movants include their chosen counsel's detailed resume describing the firm's experience with securities class actions. (*See* Hopkins Decl., Ex. E, ECF No. 14-5.) "After reviewing [Movants'] submission detailing Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes

that the firm is qualified to serve as lead counsel of the class" and to protect the interests of the class. *Francisco v. Abengoa, S.A.*, No. 15-CV-6279 (ER), 2016 WL 3004664, at *7 (S.D.N.Y. May 24, 2016); *see also, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV--2319 (AT)(SN), 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (appointing Levi & Korsinsky as lead co-counsel); *Levin v. Res. Cap. Corp.*, No. 15-CV-7081 (LLS), 2015 WL 7769291, at *2 (S.D.N.Y. Nov. 24, 2015) (same). The Court therefore respectfully recommends approving Movants' selection of Levi & Korsinsky as lead plaintiffs' counsel.

## III.   <u>CONCLUSION</u>

Based on the foregoing, the Court respectfully recommends that Ko and Jolteus's motion for consolidation, appointment as co-lead plaintiffs, and approval of lead plaintiffs' counsel at ECF No. 12, supplemented at ECF Nos. 31 and 35, be **granted**, and that the remaining movants' applications at ECF Nos. 10, 15, 18, and 21 be **denied as moot**. The Court further recommends that the Court enter the attached revised proposed order to effectuate its ruling.[7]

Within 14 days, any party may serve and file objections to this report and recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Brooklyn, New York
August 10, 2022

                        /s/Marcia M. Henry
                        MARCIA M. HENRY
                        United States Magistrate Judge

---

[7] Movants' proposed order is modified only to update the name of the assigned district judge and minor typos.