# LEVI&KORSINSKYLLP

55 Broadway, 10th Floor
New York, NY 10006
T: 212-363-7500
F: 212-363-7171
www.zlk.com

**Nicholas I. Porritt**
nporritt@zlk.com

November 30, 2022

**VIA CM/ECF**

The Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**        *White v. Nano-X Imaging Ltd.*
                Case No. 1:20-cv-4355-WFK-MMH

Dear Judge Kuntz:

On behalf of Plaintiffs, we respectfully respond to Defendants' pre-motion letter. Dkt. No. 76. Because Defendants have failed to demonstrate that a stay is appropriate and Plaintiffs' complaint adequately states a claim for relief under the Securities Exchange Act of 1934, Defendants' requests should be denied.

### A.        Defendants Fail to Demonstrate that a Stay is Appropriate.

Defendants seek a stay of this action pending resolution of their Consolidation Motion (Dkt. No. 42) or until the motion to dismiss in *In re Nano-X Securities Litigation*, Case No. 1:21-cv-5517-RPK- PK ("*Nano-X*") is decided. This request is premised on the assumption that the two cases are related. Defendants concede that Judge Kovner has concluded that this action and *Nano-X* are not related but argue that Plaintiffs' Amended Complaint should change this determination.[1] Defendants are mistaken.

*Nano-X* presents different questions of law and fact from this case—the key question for consolidation. As described more fully in the opposition to the Consolidation Motion, the CCAC eliminates any doubt that this case and *Nano-X* arose out of separate frauds with distinct substantive issues. *see* Dkt. No. 63. The focus of the claims in this action are whether Nano-X misrepresented its FDA submissions and fabricated the existence of commercial agreements to deploy its new product (¶¶ 10, 92-125), whereas the focus of the claims in *Nano-X* is whether that product is functionally equivalent to existing technology and the costs of the Nanox.Arc. The CCAC retains the same class period as the original complaints (August 21, 2020 to September 15, 2020) and relies on the same corrective disclosure. ¶¶1, 126-30. However, *Nano-X* covers a sixty-four-week class period and relies on an SEC subpoena as its corrective disclosure. The discovery and issues

---

[1] Citations to "¶" refer to Plaintiffs' Consolidated Class Action Complaint ("CCAC"), filed on October 31, 2022. Dkt No. 62.

LEVI&KORSINSKYLLP

November 30, 2022
Page 2 of 4

to be tried are distinct and the outcome of *Nano-X* will not impact these proceedings. Accordingly, none of the Defendants' concerns in their letter is applicable and this case should not be stayed.

**B.      Plaintiffs Adequately Pled Material Misrepresentations and Omissions.**

As an initial matter, Defendants' criticism of the corrective disclosure is an exercise in misdirection. The truth of the Citron Report is "a factual dispute not appropriate for resolution at this stage." *Ho v. Duoyuan Global Water, Inc.,* 887 F. Supp. 2d 547, 564 (S.D.N.Y 2012) (internal quotations omitted). Therefore, at this preliminary posture, the Court must accept the factual allegations contained in the CCAC as true and the Citron Report as sufficiently reliable as a factual source for Plaintiffs' allegations. *See Chambers v. Time Warner, Inc.* 282 F.3d 147, 152 (2d Cir. 2002); *Bernstein v. Seeman,* 601 F.Supp.2d 555, 556 (S.D.N.Y.2009) ("[A] motion to dismiss is not the proper stage at which to resolve factual disputes."). Defendants disparage the Citron Report to downplay Plaintiffs' well-pleaded allegations that Nano-X misled investors on the relevant facts about its distributors and FDA submissions.

First, Defendants argue that the challenged statements about their distributors are not false or misleading because Nano-X accurately disclosed the relevant facts about the contracts, including the customers' names and details and applicable conditions precedent. This misses the point. When discussing their distributors, Defendant Poliakine stated that they were "appropriate partners, partners that are already in the field, they know their own local market, and they are capable financially and otherwise to carry out our business model." ¶¶107-108.  The CCAC sufficiently describes why this, and other statements are false and misleading. For instance, Nano-X's largest purported distributor, Gateway, was not experienced in medical imaging devices or with healthcare providers. ¶¶109-110, 112-113. Gateway does not hold itself out as a medical device distributor. ¶¶95, 113. This lack of industry experience made Gateway and other customers ill-suited to execute Nano-X's business plan, even if the FDA approved the Nanox.ARC.

Second, Defendants argue that the challenged statements about their prospects for FDA clearance are not false or misleading because Nano-X disclosed its expected FDA submission strategy, the status of its FDA submission, and its expectations. Again, this misses the point entirely.  Defendants' expectations for rapid approval from the FDA—that it was a "reasonable assumption" that the Nanox.ARC would get regulatory approval in the near-term and it would soon be "ready to go prime time"—were false given known deficiencies with Nano-X's submissions. ¶¶97-100, ¶¶117-121.

**C.      The Alleged Misrepresentations are Not Forward-Looking Statements**

Nano-X filed a 510(k) premarket submission with the FDA, claiming that its device was substantially equivalent to a legally marketed device, as opposed to an application for a novel product. A device is substantially equivalent if it has the same intended use and has the same technological characteristics or has the same intended use and has different technological characteristics, does not raise different questions of safety and effectiveness, and the information submitted to the FDA demonstrates that the device is as safe and effective as the legally marketed device. Given the requirements for a 510(k), Defendants statements were not forward-looking. Defendants first submitted their 510(k) application to an accredited review organization for its simple non-commercial product in January 2020 and did not resolve the application' major deficiencies until December 2020. ¶¶55, 64. After the FDA finally approved this 510(k) application

LEVI&KORSINSKYLLP

in May 2021, it published a clearance letter demonstrating that it was objectively inferior to the legally marketed device devices listed in the application. ¶65. This was known to Defendants at all relevant times.

In September 2020, Defendant Poliakine set investor expectations for rapid approval from the FDA for the commercial product despite not yet submitted an application. Given the 510(k)'s requirement to demonstrate substantial equivalence to an existing device, Defendants knew how their planned commercial device compared to legally marked devices and therefore that it would not be quickly approved by the FDA. Accordingly, the statements about FDA approval could not be forward looking.

### D.    The Alleged Misrepresentations are not Opinion Statements

Defendants argue that the CCAC fails to allege particularized facts demonstrating that Defendant Poliakine did not believe his statements about the FDA (¶117) and Nano-X's customers (¶122) when he made them. As discussed *supra* Section C, the FDA's 510(k) submission required factual comparisons to existing devices and therefore he had no basis to claim that approval would be a "reasonable assumption." As discussed *supra* Section B, because Nano-X's largest purported customer was not experienced in medical imaging devices or with healthcare providers and therefore was not a "service provider," but rather a distributor of Nano-X products. These are statements of fact not opinion.

### E.    The Amended Complaint Sufficiently Pleads Scienter

"A plaintiff may establish scienter by alleging facts that . . . constitute 'strong circumstantial evidence of conscious misbehavior or recklessness.'" *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 317 (S.D.N.Y. 2021) (quoting *ECA Loc. 134 IBEW Jt. Pension Tr. of Chicago*, 553 F.3d 187, 198 (2d Cir. 2009)). Here, the CCAC explains that Defendants had no basis to make the claims they made regarding their customers or FDA approval. *See supra* Sections B-D.

### F.    The Amended Complaint Sufficiently Pleads Loss Causation

To establish loss causation, Plaintiffs must "demonstrat[e] that 'the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) (emphasis in original). Here, the Nano-X's distributors' inability to carry out the company's proposed business model and the true nature of the FDA submissions was plausibly first revealed to the market by the Citron Report. s*ee Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020) ("In short, the stock value loss following the disclosure of such information in the [Citron] report is sufficient at this stage to plead loss causation as to each of the claims.").

Plaintiffs have adequately alleged all the elements necessary to state primary violations under Section 10(b) and, therefore, have adequately alleged the prerequisites necessary to assert control-person liability claims under Sections 20(a). *Employees' Ret. Sys. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)

In sum, none of the arguments raised by Defendants warrant granting their requests for a pre-motion conference.

LEVI&KORSINSKYLLP

November 30, 2022
Page 4 of 4


                                        Respectfully,

                                         s/ Nicholas I. Porritt
                                        Nicholas I. Porritt


CC:     All counsel of record (*via CM/ECF*)

NEW YORK  ·  WASHINGTON, D.C.  ·  CONNECTICUT  ·  CALIFORNIA