# Exhibit 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL P. MCLAUGHLIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NANO-X IMAGING LTD., RAN POLIAKINE, and TAL SHANK,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Daniel P. McLaughlin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nano-X Imaging Ltd. ("Nano-X" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Nano-X securities between

June 17, 2021 and August 18, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Nano-X is a development-stage company that develops, produces, and commercializes digital X-ray source technology for the medical imaging industry worldwide. The Company is developing, among other technologies, the "Nanox.ARC", which is an imaging system that uses a purportedly novel X-ray source, also developed by the Company.

3. On June 17, 2021, Nano-X submitted a 510(k) submission[1] to the U.S. Food and Drug Administration (the "FDA") for its multi-source version of the Nanox.ARC. Following this submission, Defendants touted the Nanox.ARC's regulatory and commercial prospects in various public statements and SEC filings.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Nano-X's 510(k) application for the Nanox.ARC was deficient; (ii) accordingly, it was unlikely that the FDA would approve the 510(k) application for the Nanox.ARC in its current form; (iii) as a result, Nano-X had overstated the Nanox.ARC's regulatory and commercial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

---

[1] A 510(k) is a type of premarket submission made to the FDA to demonstrate that a device to be marketed is as safe and effective, that is, substantially equivalent, to a legally marketed device. *See Premarket Notification 510(k)*, U.S. Food & Drug Admin., https://www.fda.gov/medical-devices/premarket-submissions/premarket-notification-510k (last visited Sept. 28, 2021).

5.     On August 19, 2021, Nano-X reported that the Company "received a request for additional information from the [FDA] concerning the Company's last 510(k) submission of its multi-source device, Nanox.ARC[,]" and that "[t]he submission file is placed on hold pending a complete response to the FDA's list of deficiencies[,]" with "[t]he Company's response . . . due within 180 days from the date of the request for additional information."

6.     On this news, Nano-X's ordinary share price fell $2.25 per share, or 9.5%, to close at $21.43 per share on August 19, 2021.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District. Pursuant to Nano-X's most recent annual report on Form 20-F, as of December 31, 2020, there were 46,100,173 of the Company's ordinary shares outstanding. Nano-X's ordinary shares trade in the U.S. on the NASDAQ Stock Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands, of investors in

3

Nano-X's ordinary shares within the U.S., some of whom undoubtedly reside in this Judicial District.

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

12. Plaintiff, as set forth in the attached Certification, acquired Nano-X securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Nano-X is organized under the laws of the State of Israel with principal executive offices located at Communications Center, Neve Ilan, Israel 9085000. The Company's ordinary shares trade in an efficient market on the NASDAQ under the ticker symbol "NNOX".

14. Defendant Ran Poliakine ("Poliakine") has served as Nano-X's Chief Executive Officer at all relevant times. Poliakine also serves as the Company's Chairman of the Board of Directors.

15. Defendant Tal Shank ("Shank") has served as Nano-X's Vice President of Corporate Development at all relevant times.

16. Defendants Poliakine and Shank are sometimes referred to herein as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of Nano-X's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Nano-X's SEC filings and press releases

4

alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Nano-X, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     Nano-X and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Nano-X is a development-stage company that develops, produces, and commercializes digital X-ray source technology for the medical imaging industry worldwide.  The Company is developing a purportedly new, affordable, medical imaging system, which Nano-X refers to as its "Nanox System".  The Nanox System has two integrated components—a hardware component called the "Nanox.ARC", and a software component called the "Nanox.CLOUD".  The Nanox.ARC purportedly uses a novel X-ray source, also developed by the Company.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on June 17, 2021, when Nano-X issued a press release announcing the Company's submission of a 510(k) application for the Nanox.ARC with the FDA (the "June 2021 Press Release").  That same day, the Company filed the June 2021 Press Release as an exhibit to a report of foreign private issuer on Form 6-K with the SEC, which was signed by Defendant Shank.  The June 2021 Press Release stated, in relevant part, that "the Company has

submitted a 510(k) premarket notification application to the [FDA] for the first version of its multi-source Nanox.ARC 3-D digital tomosynthesis system"; that "[t]he first version of the multi-source Nanox.ARC will be followed by future Nanox.ARC versions"; and that "[t]he system is being designed for easy setup and operation with multiple alternately-switched X-ray tubes arranged around the patient."

21. The June 2021 Press Release also quoted Defendant Poliakine, who represented that "[t]he 510(k) submission for the first version of our multi-source Nanox.ARC is an important achievement"; that "[t]here exists a significant unmet medical need globally for a more accessible and cost-effective medical imaging solution" and, "[i]f cleared by the FDA, we believe our Nanox.ARC 3-D digital tomosynthesis can address this need"; and that "[w]e are excited to take this next step in our regulatory process as we move toward future versions of the multi-source Nanox.ARC, which will fulfill current and future contracts with service providers and collaboration agreements and allow us to achieve our global vision[.]"

22. On July 12, 2021, Nano-X issued a press release announcing that the Company had signed an agreement for the deployment of 1,000 Nanox Systems, including the Nanox.ARC, in Nigeria (the "July 2021 Press Release"). That same day, the Company filed the July 2021 Press Release as an exhibit to a report of foreign private issuer on Form 6-K with the SEC, which was signed by Defendant Shank. The July 2021 Press Release stated, in relevant part, that Nano-X "enters the West African market, signing an exclusive distribution deal with EiLEENO Pharma to deploy Nanox's medical imaging services in Nigeria"; that, "[s]ubject to regulatory approval, Nanox and EiLEENO Pharma will collaborate on the deployment and operation of 1,000 Nanox Systems comprised of [*inter alia*] the Nanox.ARC[,]" which is "designated to improve the standard of care in Nigeria via significantly increased availability of medical imaging for the benefit of

6

patients across the country"; and that, "[a]ccording to the agreement and subject to regulatory approval, EiLEENO Pharma will commit to a minimum annual service fee to Nanox[,]" with "an initial term of four years [that] is renewable for an additional term of four years with both parties' mutual consent."

23.  The July 2021 Press Release also quoted Defendant Poliakine, who stated that "West Africa is one of the prime target markets for us," and that "[t]he agreement with EiLEENO Pharma will allow us to support Nigeria's population, enabling the nation to run high-volume screening campaigns cross-country."

24.  On August 10, 2021, Nano-X issued a press release announcing the Company's second quarter 2021 results and providing a business update (the "August 2021 Press Release"). That same day, the Company filed the August 2021 Press Release as an exhibit to a report of foreign private issuer on Form 6-K with the SEC, which was signed by Defendant Shank. The August 2021 Press Release quoted Defendant Poliakine, who highlighted several planned acquisitions that would further increase the Nanox.ARC's commercial prospects, stating, in relevant part:

> "Expanding access to medical imaging via widespread deployment of the Nanox.ARC solves just one of the obstacles to achieving true population health management . . . . The Nanox.ARC, together with the acquisitions of Zebra Medical Vision and USARAD, if consummated, would allow us to support our systems with a large network of radiologists empowered with highly advanced AI algorithms. This end-to-end, globally connected medical imaging solution will allow for the rapid interpretation of medical images into actionable medical interventions and would also represent a significant step toward our vision of true population preventive health care.

> "With regards to the ongoing development of the multi-source Nanox.ARC, as you may recall, one of the highlights since our last quarterly update was the FDA 510(k) submission for the first version of the multi-source Nanox.ARC. We are reiterating our goal of deploying 15,000 by the end of 2024.["]

7

25.     Also on August 10, 2021, Nano-X hosted a conference call with analysts and investors to discuss the Company's second quarter 2021 results (the "August 2021 Investor Call"). In his opening remarks on that call, Defendant Poliakine discussed the Nanox.ARC's regulatory and commercial prospects, stating, *inter alia*:

> With th[e EiLEENO Pharma] agreement, we now have contracts in place to deploy 6,150 Nanox.ARC units. So 6,150 Nanox.ARC units plus agreements with USARAD and SK Telecom to deploy an additional 5,500 units across the U.S., Korea and Vietnam, pending, of course, local regulatory approvals and passing user acceptance tests. We're in constant communication with our various MSaaS [Managed Software as a Service] partners around the globe.
>
> * * *
>
> In the second quarter of 2021, we submitted to the FDA a 510(k) application for the first version of our multisource Nanox.ARC, and this is in progress with the FDA as we speak . . . . In summary, the deployment of 15,000 units of Nanox.ARC before the end of 2024 is our way of meeting the first challenge by increasing availability of medical imaging worldwide.
>
> * * *
>
> With our Nanox.ARC system and if our proposed transactions are consummated, we will have the radiologists of USARAD and the AI capabilities of Zebra. As such, we will be able to create a globally connected end-to-end radiology solution.

26.     During the question-and-answer phase of the August 2021 Investor Call, a LifeSci Capital analyst sought clarification on the regulatory timeline for the Nanox.ARC's 510(k) application, and, in response, Defendant Poliakine downplayed the potential for delays with that application, while simultaneously discussing the purported strength of that submission:

> **[LifeSci Capital Analyst]**
>
> . . . . I just want to get some clarification on regulatory timeline. I know you'd mentioned they've done the first 510(k) submission for the Nanox.ARC. But can you -- is this system commercial ready? Or are you expecting to make another submission for the commercial-ready system. What would be the timing of that? And I guess, what are the key differences between these two submissions? And then just following up from that, given the amount of back and forth that you had with the FDA for the single source system and the complexity of the multisource

submission? And I guess, what is your thinking around the timing of an ultimate FDA clearance and whether you might see some ex-U.S. approvals prior to that?

**[Defendant] Poliakine**

. . . . So actually, we view the Nanox.ARC . . . as a very significant FDA approval because basically, it cleared the technology. And the multisource was submitted. And immediately, we got feedback from the FDA and some questions. So that's in process. As you all know, we cannot control the timing of the FDA, but we have all confident that we're in good shape there. We're going to submit a second submission of the Nanox.ARC with the final, I would say, and the best performance level of the Nanox.ARC, still during this year, and we expect that, as we said, that will allow us to -- in the U.S. and outside of the U.S. to ship to the very minimal 1,000 units during 2022.

Nothing has changed in that domain. The experience we had by the delay during the corona time, et cetera, with the FDA is definitely not the same experience we have right now. And I can only say that we already have some communication there, which is all positive, and we feel confident that we are in a good shape to meet everything we said so far, which is basically submit and get clearance in a way that will allow us to ship products in the U.S. and outside of the U.S. as planned during 2022.

27. The statements referenced in ¶¶ 20-26 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Nano-X's 510(k) application for the Nanox.ARC was deficient; (ii) accordingly, it was unlikely that the FDA would approve the 510(k) application for the Nanox.ARC in its current form; (iii) as a result, Nano-X had overstated Nanox.ARC's regulatory and commercial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

28. On August 19, 2021, during pre-market hours, Nano-X filed a report of foreign private issuer on Form 6-K with the SEC, disclosing, in relevant part:

9

On August 12, 2021, NANO-X . . . received a request for additional information from the [FDA] concerning the Company's last 510(k) submission of its multi-source device, Nanox.ARC. The submission file is placed on hold pending a complete response to the FDA's list of deficiencies. The Company's response is due within 180 days from the date of the request for additional information.

29.    On this news, Nano-X's ordinary share price fell $2.25 per share, or 9.5%, to close at $21.43 per share on August 19, 2021.

30.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<b><u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u></b>

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Nano-X securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Nano-X securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Nano-X or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Nano-X;

- whether the Individual Defendants caused Nano-X to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Nano-X securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

11

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Nano-X securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Nano-X securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

40.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

41.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Nano-X securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Nano-X securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Nano-X securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Nano-X's finances and business prospects.

44.     By virtue of their positions at Nano-X, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Nano-X, the Individual Defendants had knowledge of the details of Nano-X's internal affairs.

46.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Nano-X.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Nano-X's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Nano-X securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Nano-X's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Nano-X securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

47.     During the Class Period, Nano-X securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Nano-X securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Nano-X securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Nano-X securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

15

that the Company had been disseminating misrepresented financial statements to the investing public.

<u>**COUNT II**</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

50.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     During the Class Period, the Individual Defendants participated in the operation and management of Nano-X, and conducted and participated, directly and indirectly, in the conduct of Nano-X's business affairs.  Because of their senior positions, they knew the adverse non-public information about Nano-X's misstatement of income and expenses and false financial statements.

52.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Nano-X's financial condition and results of operations, and to correct promptly any public statements issued by Nano-X which had become materially false or misleading.

53.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Nano-X disseminated in the marketplace during the Class Period concerning Nano-X's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Nano-X to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Nano-X within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Nano-X securities.

16

54. Each of the Individual Defendants, therefore, acted as a controlling person of Nano-X. By reason of their senior management positions and/or being directors of Nano-X, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Nano-X to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Nano-X and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Nano-X.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 5, 2021                    Respectfully submitted,

                                          POMERANTZ LLP

                                          */s/ Jeremy A. Lieberman*
                                          Jeremy A. Lieberman
                                          Gustavo F. Bruckner

17

J. Alexander Hood II
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
gfbruckner@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

18

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, *Daniel P. McLaughlin*, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Nano-X Imaging Ltd. ("Nano-X" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Nano-X securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Nano-X securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in Nano-X securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.


Executed    9/27/2021
            (Date)


                                        _Daniel P. McLaughlin_
                                        (Signature)

                                        _Daniel P. McLaughlin_
                                        (Type or Print Name)

**Nano-X Imaging Ltd. (NNOX)**                                                           **McLaughlin, Daniel**

**List of Purchases and Sales**

| Security Type | Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Common Stock | Purchase | 6/17/2021 | 100 | $32.5900 |
| Common Stock | Purchase | 6/22/2021 | 100 | $30.8600 |
| Common Stock | Purchase | 6/22/2021 | 100 | $31.0500 |
| Common Stock | Purchase | 6/23/2021 | 100 | $31.2600 |
| Common Stock | Purchase | 6/24/2021 | 100 | $30.4100 |
| Common Stock | Purchase | 6/25/2021 | 200 | $31.9900 |
| Common Stock | Purchase | 8/17/2021 | 100 | $24.2300 |
| NNOX 2021-06-25 Call $31.50 | Sale | 6/17/2021 | (2) | $2.5000 |
| NNOX 2021-06-25 Call $31.50 | Sale | 6/17/2021 | (1) | $2.7500 |
| NNOX 2021-06-25 Call $31.50 | Sale | 6/17/2021 | (2) | $2.2500 |
| NNOX 2021-07-30 Call $29.00 | Purchase | 7/30/2021 | 10 | $0.2500 |
| NNOX 2021-08-20 Call $40.00 | Purchase | 6/17/2021 | 10 | $2.5000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 2 | $2.5000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $2.8000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.0000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.2000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.0000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.3000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.3000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/17/2021 | 1 | $3.5000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/18/2021 | 1 | $2.5000 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 6/21/2021 | 1 | $2.2500 |
| NNOX 2022-01-21 Call $70.00 | Purchase | 7/7/2021 | 12 | $2.3500 |
| NNOX 2023-01-20 Call $100.00 | Purchase | 6/17/2021 | 2 | $6.0000 |
| NNOX 2023-01-20 Call $100.00 | Purchase | 6/28/2021 | 2 | $5.5000 |
| NNOX 2023-01-20 Call $100.00 | Purchase | 7/8/2021 | 2 | $4.7000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 7/19/2021 | 1 | $9.0000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 7/19/2021 | 1 | $8.3000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 7/19/2021 | 1 | $8.7000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 7/23/2021 | 1 | $9.0000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 8/16/2021 | 1 | $7.6000 |
| NNOX 2023-01-20 Call $40.00 | Purchase | 8/16/2021 | 1 | $7.7000 |
| NNOX 2023-01-20 Call $40.00 | Sale | 6/25/2021 | (1) | $12.1000 |
| NNOX 2023-01-20 Call $50.00 | Purchase | 6/22/2021 | 2 | $9.8000 |
| NNOX 2023-01-20 Call $50.00 | Purchase | 7/8/2021 | 2 | $9.4000 |
| NNOX 2023-01-20 Call $50.00 | Purchase | 7/19/2021 | 2 | $7.1000 |