## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EDWARD KO and DERSON O. JOLTEUS, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NANO-X IMAGING LTD., RAN POLIAKINE, and ITZHAK MAAYAN,<br><br>Defendants, | Case No. 1:20-cv-04355 - WFK - MMH<br><br><br>Hon. William F. Kuntz, II<br><br>Hon. Magistrate Judge Marcia M. Henry |

## PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY

## I.    PRELIMINARY STATEMENT

Defendants' motion to stay marks the third attempt to effectively consolidate two unrelated cases.  Their previous motion to reassign *In re Nano-X Securities Litig.*, No. 1:21-cv-05517-RPK-PK ("*Nano-X*") was denied and their motion to consolidate that case with *White v. Nano-X Imaging Ltd., et al.*, No. 1:20-cv-04355-WFK-MMH ("*White*"), which rehashes the reassignment arguments, is still pending. Now Defendants claim that a stay in this case is needed to avoid the risk of inconsistent rulings and that the outcome of this action could impact proceedings in the second securities fraud class action against the Defendants. *See* Dkt. Nos. 81-82. Defendants are mistaken. A year ago, the court in *Nano-X* found that case was not sufficiently related to this case as to merit reassignment.[1]  Nothing in the interim has occurred to change that conclusion or justify staying this action. The claims in *White* are still fundamentally different from the claims in *Nano-X*. The two cases still have limited temporal and factual overlap. And finally, the plaintiffs in the respective actions are still vastly different. Accordingly, Defendants' motion to stay should be denied.

## II.    BACKGROUND

### A. *White v. Nano-X Imaging Ltd.*

Nano-X purportedly develops and produces x-ray source technology for the medical imaging industry. ¶ 20[2]. Throughout the Class Period from August 21, 2020 to September 15,

---

[1] "ORDER: Defendants' request for reassignment 18 is denied. Local Rule 50.3.1 permits the transfer of cases to a single judge if the cases contain "similar[]... facts and legal issues" or "arise from the same transactions or events," such that "a substantial saving of judicial resources is likely to result." After consultation with Judge Kuntz and Judge Kuo and review of the case materials, the Court has determined that this case. [*Nano-X*] is not sufficiently related [*White*] and [*Duarte*]to justify reassignment of this case. Ordered by Judge Rachel P. Kovner on 1/4/2022. (Daus, Benjamin) (Entered: 01/04/2022)"

[2] Citations to "¶ __" refer to Plaintiffs' Consolidated Class Action Complaint ("CCAC"), filed on October 31, 2022. Dkt No. 62.

1

2020, Defendants issued a series of material misstatements and omissions about Nano-X's distributors, their regulatory applications, and their technology in their public filings and investor presentations. Their material misstatements and omissions created the false impression that Nano-X's distributors were experienced in the medical imaging field, the Nano-X System was close to regulatory approval and commercialization, that the MSaaS agreements were definite, and that these agreements would generate revenue in the near-term either through completing scans or by way of the distributers' letters of credit. None of these impressions were accurate. ¶¶ 10, 92-125.

The sole corrective disclosure in the White and Duarte actions is a report published on September 15, 2020, by Citron Research ("Citron Report"). The Citron Report revealed, among other things, "NNOX's commercial agreements may sound nice on the surface, but these appear to be no more than fake customers." The Citron Report revealed that the Company's claims about its customers with commercial agreements were false and set forth the same exact examples of purportedly fake customers of Nano-X. The Citron Report also revealed that Nano-X mislead investors about their technology by mischaracterizing their FDA application. ¶ 9. On September 22, 2020, analyst firm Muddy Waters Research, published its own exposé, further substantiating the Citron Rerport: "Nanox: Star Trek, Theranos, and Nikola" (the "Muddy Waters Report"). The Muddy Waters Report identified serious deficiencies with the distributers Nano-X listed in the prospectus, noting that they lacked industry expertise, were unable to obtain the letter of credit in the amount stated, were incapable of providing stated service levels, and the agreements provided significant contingencies for the distributers. The radiologists interviewed by Muddy Waters Research voiced a profound lack of belief in Nano-X's claims and

2

technological validity. Ultimately, the Muddy Waters Report concluded, "that NNOX has no real product to sell other than its stock." ¶ 11.

**B.** *In re Nano-X Securities Litigation*

The second securities fraud class action against the Defendants was filed on October 21, 2021, and focuses on misrepresentations relating to whether Defendants' product is functionally equivalent to existing technology and the costs of the Nanox.Arc. *See* Saltzman Decl., Ex. 3. The class period of the *Nano-X* action is from August 21, 2020 to November 18, 2021.  Id. at ¶ 1. The nature of the *Nano-X* action is that "[s]ince its first initial public offering ("IPO"), the Company has persisted in its claim that it can manufacture an X-Ray system (the Nanox.ARC) that is comparable to the computerized tomography ("CT") scanner and at a significantly lower cost, thereby revolutionizing the medical imagining market."  Id. at ¶ 3.  The alleged misstatements in *Nano-X* come from 13 different sources, including the IPO Registration Statement, the Secondary Public Offering Registration Statement, investor presentations, earnings calls and the Company's SEC Form 20-F for fiscal year ended December 31, 2020.  Id. at ¶¶ 65-96.

The alleged misrepresentations in the *Nano-X* complaint concerns Defendants' statements that it could manufacture a product with the same functionalities as the CT scanner and that it could do it for a lower cost.  As the *Nano-X* complaint alleges, statements like the aforementioned "were materially false and/or misleading because Nano-X failed to disclose that: (i) the actual costs for assembling the Nanox.ARC was likely to be at least $40,000 to $50,000 per unit, e.g., upwards of 4-5 times greater than represented; and (ii) the Nanox.ARC was not comparable to the existing CT imaging, since it was unable to provide the same level of high resolution, the gold standard for medical imaging devices. As a result, the prospective

3

marketability and profitability of the Nanox.ARC, if any, was far more uncertain than investors were led to believe." Id. at ¶ 5. Accordingly, the core of the claims in *Nano-X* is that the Nanox.ARC lacked competitiveness because it did not have the same functionality as the CT scanner, much less at the lower cost as represented by Defendants. Plaintiffs in *Nano-X* also alleged that Defendants made misleading statements to investors about the cost and capabilities of its Nanox.ARC product, specifically that it was comparable to existing X-ray analog cathodes, while allowing for lower-cost production than existing medical imaging systems.

The corrective disclosures in *Nano-X* occurred in November 2021. This is 14 months after the corrective disclosure in *White*. They include (1) the November 17, 2021 announcement by the Company that it had received a subpoena from the Securities and Exchange Commission ("SEC") requesting that the Company provide documents and other information relating to the development cost of the Nanox.ARC prototype, as well as the Company's estimate for the cost of assembling the final product at scale (id. at ¶¶ 97-98); and (2) a November 18, 2021, analyst report commenting on the SEC subpoena and highlighting the Company's claims of a $10,000 system cost at mass production. Id. at ¶ 100.

## III.   ARGUMENT

While a district court has discretion to enter a stay, the movant "bears the burden of establishing need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "[T]he burden of making out the justice and wisdom" of the stay rests "heavily" on the movant. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). If there is "even a fair possibility that the stay for which he prays will work damage to someone else," then the movant "must make out a clear case of hardship or inequity in being required to go forward." *Id*. at 255. Without a showing of "undue prejudice" to the defendant, there is "no reason why [a] plaintiff should be delayed in its efforts to diligently

4

proceed to sustain its claim." *Chevron Corp.v. Donziger*, 970 F. Supp. 2d 214, 220 (S.D.N.Y. 2013) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir. 2012)). Furthermore, a court's interest is usually best served by discouraging motions to stay. *Hicks v. City of New York*, 268 F. Supp. 2d 238, 243 (E.D.N.Y. 2003).

District courts have also generally considered "(1) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (2) the private interests of and burden on the defendant; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Medien Patent Verwaltung AG v. Warner Bros. Entm't Inc.*, 2014 WL 1169575, at *2 (S.D.N.Y. Mar. 21, 2014). Here, the Defendants have failed to demonstrate that a stay is appropriate, and their motion should be denied accordingly.

### A. Defendants Fail to Demonstrate that a Stay is Appropriate

Defendants' motion is premised that a stay would avoid the risks of competing class actions, and that a stay would benefit and not prejudice the Plaintiffs or the class. *See Consol. Edison Co. of New York v. U.S.*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998) (Finding that the plaintiffs' legitimate interest in obtaining injunctive relief would suffer more prejudice from the imposition of a stay than it would make it less burdensome on the defendant to defend a single action and promote judicial efficiency when the plaintiffs filed separate actions). Here too, Plaintiffs would be prejudiced if the Court granted a stay. The two cases involve materially different claims and different questions of law and fact.

Defendants' reliance on *In re Facebook, Inc., IPO Securities & Derivative Litigation*, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013), is misplaced.  In *Facebook*, the Court denied a Plaintiff's motion to sever its case from the consolidated thirty-one Section 11 putative

shareholder class actions asserting securities law claims arising from Facebook's initial public offering.  2013 WL 4399215, *1.  By virtue of that cause of action, the multitude of consolidated cases were all tied to the IPO. Here, the two cases are brought under Section 10(b) of the Exchange Act and relate to different misrepresentations and corrective disclosures. The focus of the claims in *White* is whether the company misrepresented its commercial agreements and prospects, whereas the focus of the claims in *Nano-X* is whether Defendants' product is functionally equivalent to existing technology and the costs of the Nanox.Arc. The CCAC retains the same class period as the original complaint, August 21, 2020 to September 15, 2020, and relies on the same corrective disclosure. ¶¶1, 126-30. However, *Nano-X* involves corrective disclosures related to an SEC subpoena fourteen months after the end of *White's* class period. In fact, the *Nano-X* class period is over 20 times longer than the one in *White.*

Defendants' claims that a stay would benefit plaintiffs are misguided.  The plaintiffs in the respective actions are vastly different.  One of the *White* plaintiffs sold his stock before the *Nano-X* corrective disclosure, he is therefore unable to be a class representative for the *Nano-X* claims. Another plaintiff did not purchase any stock during the *Nano-X* class period and his lack of purchases later into the *Nano-X* class period may cast doubt on whether he can pursue claims for misleading statements issued much later.  Similarly, the *Nano-X* Lead Plaintiff did not purchase shares until long after the end of the *White* class period, which means it would not be able to pursue the *White* claims.

### B.  The Discretionary Factors Do Not Support a Stay

Defendants' request is premised on the assumption that the two cases are related. Defendants have failed to explain why the Court should prejudice the Plaintiffs, particularly where the claims between the two actions are not substantially similar. *See Travis v. Navient*

*Corp.*, 284 F. Supp. 3d 335, 348 (E.D.N.Y. 2019). A stay would serve no purpose other than to delay litigation, and the balance of prejudice weighs heavily against granting a stay. By using serial, tactical procedural motions, Defendants hope to benefit from delay at the expense of the Plaintiffs. *See Intell. Ventures II L.L.C. v. JP Morgan Chase & Co.*, 13 CIV. 3777 (AKH), 2014 WL 10919562, at *4 (S.D.N.Y. Aug. 11, 2014) (Denying motion to stay pending the resolution of the same patents at issue in six other cases as it would have only a speculative streamlining effect and would present Defendants with an unfair tactical advantage).

A stay will prejudice plaintiffs by delaying this litigation and affecting discovery. Under the PSLRA, discovery is stayed pending the outcome of the motion to dismiss. Should the Court grant Defendants leave to file such a motion, after a stay is granted, this will adversely impact Plaintiff's ability to get discovery. Delayed motion practice could take over a year to resolve. Common issue with obtaining discovery ages after the fact—unavailability of witnesses and difficulty locating relevant documents—are compounded in this case because Nano-X is an Israeli firm, and its purported customers and distributors are all located outside of the United States on four continents. Plaintiffs will require Letters Rogatory to obtain discovery from foreign non-parties, which is already a lengthy process. Staying this action will further delay necessary international discovery and may prevent plaintiffs from obtaining documents and testimony from witnesses that will be necessary to prove their case.

Because the claims in the two lawsuits are not sufficiently related, Defendants' bare assertion that having to defend against them is burdensome should be afforded no weight. It is also in the Court's interest to allow plaintiffs harmed by different misrepresentations to pursue damages appropriately in separate actions. Finally, because this case involves a publicly traded company, it is in the interest of the investing public—*i.e.* persons not parties to the civil

7

litigation—that securities fraud claims are prosecuted.   Accordingly, the balance of factors weighs against granting a stay. *Medien Patent,* 2014 WL 1169575, at \*3.

**C.   The "First-Filed Rule" Does Not Apply Because This Case is Not "Competing" with *Nano-X***

The Second Circuit has held that the "first-filed" rule applies only to competing lawsuits, not merely those that may overlap in the future as to some claims. *First City Nat'l Bank & Trust v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989)*; accord D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *Kytel Int'l Group, Inc. v. Rent A Ctr.*, Inc., No. 01-9354, 43 Fed. Appx. 420, 422 (2d Cir. Aug. 5, 2002) (finding that "[t]he first filed rule, a change of venue principle, permits the transfer or dismissal of subsequently commenced litigation involving the *same parties and* the *same issues* when both suits are pending in federal courts") (emphasis added); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974) (rule applies only "[w]here an action is brought in one federal district court and a later action embracing the *same issue* is brought in another federal court") (emphasis added). As discussed above, there is no competition between these cases because they involve different theories of damages and liability and relate to different corrective disclosures about different issues that were made years apart.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied.


Dated:       January 20, 2023                          Respectfully submitted,


                                                                **LEVI & KORSINSKY, LLP**


                                                                 *s/ Adam M. Apton*
                                                                Adam M. Apton


8

Nicholas I. Porritt
Max E. Weiss
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: aapton@zlk.com
Email: nporritt@zlk.com
Email: mweiss@zlk.com

*Attorneys for Plaintiffs and the Class*