# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NANO-X SECURITIES LITIGATION | Case No. 1:21-cv-05517-RPK-PK<br><br><br>Hon. Rachel P. Kovner<br><br>Hon. Magistrate Judge Peggy Kuo |

**PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     SUMMARY OF LITIGATION AND THE SETTLEMENT . Error! Bookmark not defined.

        A.      Background and Procedural History ................................................................ 2

        B.      The proposed Terms of Settlement .................................................................. 5

III.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL .................................................................................. 6

        A.      Standards for Preliminary Approval ................................................................ 6

        B.      The Proposed Settlement Is Procedurally Fair and the Result of Arms-Length Negotiations by Experienced and Knowledgeable Counsel ................................ 7

        C.      The Proposed Settlement Is Substantively Fair ................................................ 8

                1.      Plaintiffs and Plaintiffs' Counsel Have Zealously Represented the Class ....................................................... 9

                2.      The Stage of the Proceedings Constitute an Appropriate Time to Settle .................................................................. 10

                3.      The Proposed Settlement is a Favorable Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Faced .......................................... 10

                a)      The Complexity, Expenses, and Likely Duration of the Litigation. ................................................................... 14

                b)      The Risk of Establishing Liability and Damages ........... 15

                4.      The Settlement Treats Settlement Class Members Equitably ................................................................ 17

                5.      The Proposed Notices Are Constitutionally Sound And Appropriate ................................................................ 18

                6.      The Additional Rule 23(e) Factors Support Preliminary Approval. ....................................................................... 19

                7.      The Parties Have Agreed to a Side Agreement Regarding Opt-Outs ....................................................................... 21

                8.      The Remaining *Grinnell* Factors Support Preliminary Approval ....................................................................... 21

IV.     THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS ............ 22

V.    PROPOSED SCHEDULE..........................................................................................25

VI.   CONCLUSION.......................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................24, 25

*Avila v. Ardian Corp.*, 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022).............................23

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ......................................................................................23

*Chilton v. Chiumento Group*,
365 Fed. Appx. 298 (2d. Cir. 2010) .................................................................................24

*Christine Asia v. Yun Ma,*
2019 WL 5257534 (S.D.N.Y. Oct. 6, 2019)....................................................................21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................................8, 13

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ..................................................................................................17

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004)..............................................................................18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................................8

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d. Cir. 2006) ...........................................................................................22

*Dornberger v. Metropolitan Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) .....................................................................................19

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) .........................................................................................................24

*Hayes v. Harmony Gold Mining Co.*,
No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)......................................20

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245  (N.D. Cal. Sept. 4, 2018) .................................................................21

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)..............................11

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................................................ 10, 14, 16, 17

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354  (E.D.N.Y. June 24, 2010)................................................................14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................................7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011)......................................................................................13

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y.  Apr. 19, 2007) ......................................15

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................ 10, 15

*In re IMAX Sec. Litig.*,
   No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug.1, 2012) ...............................20

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010).............................................................................16

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)..............................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................8

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ...........................................................................................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020)..................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................ 17, 18

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003)..............................................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ...............................................................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................................................17

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) .......................................................................................23

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665  (S.D.N.Y. Nov. 30, 2021)....................................................................8

*Leung v. Home Boy Rest. Inc.*,
   2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ......................................................................7

*Lewis v. YRC Worldwide Inc.*,
  2021 WL 4123315
  (N.D.N.Y. Sept. 9, 2021)..................................................................................................8

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................................13

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ...........................................................................................22

*Palacio v. E\*TRADE Fin. Corp.*,
  2012 WL 2384419 (S.D.N.Y. June 22, 2012) ..................................................................6

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................................................................16

*Rosario v. EMZ Sols. LLC*,
  2020 U.S. Dist. LEXIS 142824 (E.D.N.Y. Aug. 7, 2020) ...............................................7

*Shah v. Zimmer Biomet Holdings, Inc.*,
  2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ................................................................8

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) ....................................................................................25

*Vargas v. Cap. One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014)........................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...............................................................................................7

*Weil v. Long Island Sav. Bank*,
  188 F. Supp. 2d 164 (E.D.N.Y. 2001)............................................................................17

*Whiteley v. Zynerba Pharms., Inc.*,
  2021 WL 4206696 (E.D. Pa. Sept. 16, 2021).................................................................22

**Statutes**

15 U.S.C. § 78u-4(a)(7)........................................................................................................18

15 U.S.C. §78u-4(a)(4).........................................................................................................20

15 U.S.C. §78u-4(a)(7).........................................................................................................19

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions §4:50 (5th ed. 2012) .............................................24

David H. Kistenbroker, et al., *Developments in Securities Fraud Class Actions Against U.S. Life Sciences Companies*, HARV. L. SCH. F. CORP. GOVERNANCE (Mar. 20, 2023)...........12

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* ......................................................................11

*Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995)..........................................18, 19

*Newberg on Class Actions* (4th ed. 2002) § 11.41.........................................................................6

**Rules**

Fed. R. Civ. P.  23 ......................................................................................................passim

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiffs Davian Holdings Limited ("Davian Holdings"), Derson Jolteus, and Edward Ko (collectively, "Plaintiffs") respectfully submit this memorandum of law and the accompanying Declarations of Justin D'Aloia and Nicholas Porritt, in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of these class action securities fraud lawsuits, conditional certification of the Settlement Class, and entry of the proposed Preliminary Approval Order.[1]   The Settlement is memorialized in a Stipulation of Settlement (the "Stipulation"), filed concurrently herewith.[2]

## I.    INTRODUCTION

The proposed Settlement provides a recovery of $8,000,000 in cash to resolve two securities class actions against defendants Nano-X, Ran Poliakine, and Itzhak Maayan. It is the result of a comprehensive assessment of the strengths and weaknesses of the claims asserted by Plaintiffs in the *In re Nano-X* and *White* Actions and the significant cash consideration payable under the Settlement to purchasers and acquirers of Nano-X securities during the Settlement Class Period. This Settlement represents an excellent recovery for the Settlement Class and will eliminate the risk and uncertainty of continued proceedings, as well as the difficulties associated with securing evidence from a foreign company required to prove the claims asserted. As shown below, the proposed Settlement, which was reached with the aid of a highly experienced mediator, is fair, reasonable, and adequate, and warrants the Court's approval.

Accordingly, with Defendants' consent, Plaintiffs move this Court to enter the proposed Preliminary Approval Order that would, *inter alia*: (1) grant preliminary approval of the

---

[1]This Stipulation is entered into by and among lead plaintiff Davian Holdings Limited in the *In re Nano-X Securities Litigation*, Case No. 1:21-cv-05517-RPK-PK (the "*In re Nano-X* Action"), and lead plaintiffs Derson Jolteus and Edward Ko in *White v. Nano-X Imaging Ltd. et al.*, Master File No. 1:20-cv-04355-WFK-MMH (the "*White* Action"), on behalf of themselves and the Settlement Class and defendants Nano-X, Ran Poliakine, and Itzhak Maayan.
[2] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

Settlement; (2) preliminarily certify the Settlement Class for settlement purposes under Fed. R. Civ. P. Rule 23; (3) preliminarily appoint Plaintiffs as the class representatives for the proposed Settlement Class; and (4) preliminarily appoint the law firms of Pomerantz LLP and Levi & Korsinsky, LLP as Class Counsel for the Settlement Class; and (5) approve the proposed class notice program, including the form, content and methods of distribution.[3]

## II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.   Background and Procedural History

Nano-X is an Israel-based development-stage company seeking to introduce a commercial-grade digital X-ray source that it is incorporating into a imaging system called the Nanox.ARC (the "Nanox System").

Shortly after Nano-X completed its IPO in late August 2020, Citron Research published a report titled "Nano-X Imaging (NNOX) A Complete Farce on the Market – Theranos 2.0" (the "Citron Report"). The Citron Report indicated that (1) most if not all of the purported commercial "agreements" described in Nano-X's IPO papers were fabricated, and (2) the Nanox System was not "novel," as Nano-X claimed in its IPO filings. On September 16, 2020, a class action was filed against Nano-X in the Eastern District of New York captioned *White v. Nano-X Imaging Ltd.*, No. 20-cv-04355. Plaintiffs in *White* brought claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of all investors who purchased Nano-X securities between August 21, 2020, and September 15, 2020, for alleged misrepresentations made by Defendants in the registration

---

[3] As set forth in the parties' joint letter sent today to this Court and to the Court in the *White* Action, the parties are in agreement that the settlement need only be approved by one of the courts in the pending actions and that it would be efficient for this Court to address the motions relating to the settlement given that the putative class in this action is broader than, although it fully encompasses, the putative class members in the *White* Action.

statement Nano-X filed with the SEC in connection with its IPO regarding its prospects for regulatory approval and about projected benefits from its purported commercial agreements.

Daniel McLaughlin filed the *In re Nano-X* Action on October 5, 2021. The complaint brought Section 10(b) and 20(a) claims against Defendants on behalf of all who purchased Nano-X securities between June 17, 2021, and August 18, 2021, for alleged misrepresentations they made about the commercial prospects and purported "novelty" of the Nanox System.

On December 21, 2021, Defendants moved to have all three actions deemed related under Rule 50.3.1(d) of the Guidelines for the Division of Business Among Judges. ECF 18.[4] On January 4, 2022, this Court ruled that *McLaughlin* was "*not* sufficiently related to . . . [*White*] and [*Duarte*] to justify reassignment" after consulting with Judge Kuntz and, accordingly, denied the motion.

After being appointed Lead Plaintiff in the *In re Nano-X* Action, Davian Holdings filed an amended complaint on April 12, 2022 (the "AC"). ECF 24. The AC sought to hold Defendants liable under Sections 10(b) and 20(a) of the Exchange Act for statements they made between August 21, 2020, and November 17, 2021 (the "Settlement Class Period"), in which they claimed the Nanox System (1) could be manufactured for $8,000 to $12,000 per unit; and (2) is functionally equivalent to existing imaging technology. The AC further alleged that Defendants' fraud was exposed in November 2021 when the market learned that Nano-X received a SEC subpoena and Oppenheimer Equity Research published a report critically analyzing these matters.

On June 3, 2022, Defendants moved to consolidate all three actions before Judge Kuntz, arguing that the amendments made in the AC created new overlap with the two earlier-filed actions. *White* ECF 37. Specifically, Defendants highlighted that the AC extended the Class Period

---

[4] Docket entries in the *White* Action will be cited as "*White* ECF___" and entries in the *In re Nano-X* Action will be cited as "ECF ___."

to include the IPO filings at issue in *White* and added allegations that refer to the "novelty" of the Nanox System. In response, Lead Plaintiff emphasized that the focus of the claims in the AC is whether the Nanox System is functionally equivalent to current technology regardless of its novelty. After the motion was fully briefed, Judge Kuntz referred the motion to Magistrate Judge Marcia M. Henry for a report and recommendation.

On July 25, 2022, Defendants moved to dismiss *In re Nano-X* for failure to state a claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 ("PSLRA"). ECF 35. The motion to dismiss is fully briefed and pending. ECF 50-56.

In the *White* Action, Lead Plaintiffs were appointed on August 30, 2022. *White* ECF 50. Plaintiffs filed an amended complaint on October 31, 2022. *White* ECF 62. As amended, the *White* Complaint maintained the same Class Period and claims under Sections 10(b) and 20(a) of the Exchange Act against Nano-X, Poliakine, and the former CFO Itzhak Maayan, while adding new allegations relating to statements regarding the regulatory approval prospects for the Nano-X System given alleged known deficiencies with its applications and Nano-X's distributors' ability to carry out their contracts because they lacked experience in the medical-imaging field. In addition to claiming that Nano-X's Registration Statement contained misstatements and omissions, the *White* Complaint alleged that Defendants made false and misleading statements to financials analysts and investors at presentations on September 14 and 15, 2020.  It also alleges that Defendants violated their duties under Item 303 of Regulation S-K, 17 C.F.R. §229.303(ii) and Item 105 of Regulation S-K, 17 C.F.R. §229.105.

On November 21, 2022, Defendants sought leave from the Court in the *White* Action to file a motion to stay that action pending the outcome of the motion to dismiss in *In re Nano-X*, or

4

to file a motion to dismiss in the *White* Action. On December 2, 2022, the Court granted Defendants leave to file a motion to stay. *White* ECF 78. The motion to stay is fully briefed and pending. (*White* ECF 84-88).

In March 2023, the Parties recognized that a window had opened for settlement discussions as they awaited decisions on the motion to consolidate the two actions, the motion to stay the *White* Action, and the motion to dismiss in the *In re Nano-X* Action. After submitting detailed mediation statements, on April 3, 2022, the parties attended a formal, full-day, in-person mediation with Jed Melnick, Esq., of JAMS, with Nano-X representatives attending remotely from Israel.  The mediation was successful. Following this full-day session, the parties continued their good faith efforts to resolve the case and continued to negotiate a Term Sheet, which was executed April 28, 2023. The Term Sheet contemplated full release of liability of Defendants in return for a cash payment of $8 million for the benefit of the Settlement Class, subject to the negotiation of the Stipulation and approval by the Court.  The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement, and a compromise of all matters that are in dispute, between the Settling Parties.

B.    **THE PROPOSED TERMS OF SETTLEMENT**

The Settlement Class is defined as all persons and entities (including legal beneficiaries or participants in such entities) who purchased or otherwise acquired Nano-X Securities during the Settlement Class Period. The Settlement Class Period is August 21, 2020 through November 17, 2021, inclusive.

Under the terms of the Settlement, Plaintiffs are securing a total benefit for the Settlement Class of $8,000,000, which Defendants will pay, or cause to be paid, into an Escrow Account, and which, together with accrued interest, constitutes the Settlement Fund. Stipulation, ¶1.45. In exchange for this payment, Plaintiffs and the Settlement Class will release their claims in the *In re*

*Nano-X* and *White* Actions against Defendants and other Released Defendant Parties. *Id.*, ¶¶4.1-4.3. Plaintiffs propose that a nationally recognized class action settlement administrator, Epiq Global (the "Claims Administrator"), be appointed, subject to the Court's Approval. Preliminary Approval Order, ¶7, *see also* D'Aloia Decl. ¶19.

Once the Notice and Administration Expenses, Taxes and Tax Expenses, Lead Plaintiff Award, and Fee and Expense Award have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – will be distributed pursuant to the Court-approved Plan of Allocation to all Authorized Claimants who are entitled to a distribution of at least $10.00 (so that the payments made are economically rational given the costs associated therewith). Any amount remaining following the distribution because of uncashed or returned checks will be redistributed as feasible, until it is no longer economical to make further distributions. All Settlement Class Members will receive the same distribution depending on the number of shares they held at various points in the Settlement Class Period, as determined by the Plan of Allocation. The Plan of Allocation will be applied uniformly to all Class Members that submit valid and timely claims. The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

The proposed Settlement is an excellent recovery on the claims asserted against Defendants and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class.

## III.   THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.   Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases that tie up substantial judicial resources, use up the parties' time and money, and whose resolution typically takes years. *Palacio v. E*TRADE Fin. Corp.*, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012);

*Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Because of the presumption in favor of settlement, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007).

Fed. R. Civ. P. 23(e) provides a two-step process for approving class action settlements. First, if a proposed settlement would bind class members, the court should evaluate it to determine whether giving notice to class members would be justified. Fed. R. Civ. P. 23(e)(1). Second, once notice is given, the court should only approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23 (e)(2). Notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement.

**B.    The Proposed Settlement Is Procedurally Fair and the Result of Arms-Length Negotiations by Experienced and Knowledgeable Counsel**

Courts presume that a proposed settlement is fair and reasonable when it results from arm's length negotiations by informed and experienced counsel. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate if "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"); *see also Rosario v. EMZ Sols. LLC*, 2020 U.S. Dist. LEXIS 142824, at *9-11 (E.D.N.Y. Aug. 7, 2020), *adopted by* 2020 U.S. Dist. LEXIS 245333 (E.D.N.Y. Dec. 31, 2020) (Kovner, J.) (granting preliminary approval).  As described above, the Settlement was reached only after extensive arms-length negotiations before Jed Melnick, Esq. of JAMS, a nationally recognized mediator highly experienced in securities class actions. *See, e.g., D'Amato*

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Lewis v. YRC Worldwide Inc.*, 2021 WL 4123315, at *4 (N.D.N.Y. Sept. 9, 2021).  In addition, the Parties and their counsel were knowledgeable about the strengths and weakness of the cases prior to deciding to settle. After litigating for over two years and engaging in substantial motion practice, Plaintiffs and their counsel had an adequate basis for assessing the Settlement Class's claims and Defendants' defenses when they agreed to the Settlement.

**C.      The Proposed Settlement Is Substantively Fair**

A settlement is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e)and *Grinnell* factors. *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The *Grinnell* factors consist of:

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Rule 23(e)(2) also provides factors for the Court's consideration, which overlap considerably with the *Grinnell* factors. Under FED. R. CIV. P. 23(e)(2), a court should consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking

8

into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other. *See In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.") (citation omitted).

### 2.   Plaintiffs and Plaintiffs' Counsel Have Zealously Represented the Class

Plaintiffs and their counsel worked for months to investigate their individual and classwide claims and to prepare the case for filing. Lead Counsel conducted additional investigation after the appointments of lead plaintiff to amend the complaints in the two Actions, which included consulting with experts and hiring an investigator to interview witnesses on multiple continents. In the *In re Nano-X* Action, Lead Plaintiff Davian Holdings and its counsel opposed Defendants' motion to dismiss. Lead Counsel also opposed Defendants' numerous motions to have the Actions deemed related, be consolidated, and stayed.

Lead Counsel continued their zealous representation throughout Settlement negotiations, refusing to provide their recommendation for settlement approval until after being satisfied that the terms were favorable to Plaintiffs and the Settlement Class. After meditating for a full day before a highly-experienced mediator, Jed Melnick, Esq., on April 3, 2023, the parties reached an agreement in principle. Following this full-day session, the parties continued their good faith efforts to resolve the case and continued to negotiate a Term Sheet.

**3.      The Stage of the Proceedings Constituted an Appropriate Time to Settle**

Plaintiffs had enough information to evaluate the Settlement. That there has been no formal discovery in this case does not weigh against preliminary approval. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As set out above, before reaching the Settlement, Plaintiffs, *inter alia*, reviewed copious public information, hired an investigator to interview witnesses, consulted with various experts, and reviewed and responded to Defendants' motion to dismiss. Thus, Plaintiffs and Lead Counsel entered the Settlement well aware of the Action's strengths and weaknesses.

**4.      The Proposed Settlement is a Favorable Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Faced**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account [] the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate."). The reasonableness of a settlement must be judged "not in comparison with the possible recovery in

the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).

The Settlement represents a very favorable result for the Settlement Class. Plaintiffs have estimated recoverable damages, under a two-trader model, of approximately $86.7 million in the *White* Action for a Class Period of August 21, 2020 through September 15, 2021, and approximately $91.0 million in the *In re Nano-X Action*, which as stated above alleges that the corrective disclosure and stock price decline occurred in November 2021 – for total estimated damages of $177.7 million. But this amount could be far less depending on various scenarios.[5] Thus, the $8 million Settlement falls well within the range of reasonableness and supports preliminary approval. Indeed, the recovery here is approximately 4.5% of estimated damages, above the 1.8% median percentage recovery in securities class actions in 2022.[6]

This is a favorable result under the circumstances. Plaintiffs in the *White* Action allege that Defendants misled investors regarding (1) its entry into revenue-generating distribution agreements and (2) the timing of FDA approval for the Nanox System. Plaintiffs in the *In re Nano-X* Action allege that Defendants misled investors by representing that the Nanox System (1) could be manufactured for approximately $10,000 per unit (a fraction of the cost for current systems); and (2) is functionally equivalent to existing technology. Both sets of allegations would have been difficult to establish, including at summary judgment and trial.

---

[5] Defendants estimated damages to be much less than Plaintiffs.

[6] Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Fig. 19 (NERA Economic Consulting Jan. 24, 2023), https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

11

Indeed, cases against biotechnology companies are especially difficult and approximately than two thirds of them are dismissed outright on the pleadings.[7]

Specific challenges abounded.  For example, in the *In re Nano-X* Action, Plaintiffs would have had to adequately plead and prove that Defendants' statements about the lower costs for Nanox.ARC were false considering the economies of scale for mass production outside of the United States.  Plaintiffs would have also had to prove that Defendants' statements purportedly comparing the Nano.ARC to CT machines were misleading, even though Defendants disclosed that certain models of the Nanox.ARC were a tomosynthesis imaging system, which by definition is not a CT machine.

In the *White* Action, Plaintiffs would have had to overcome Defendants' arguments that the complaint was devoid of independent factual allegations outside of the Citron Report. Moreover, Defendants' statements about Nano-X's agreements with its distributors disclosed details about the contracts, including their names and relevant conditions precedent under the contracts, such that Defendants would have argued the market was sufficiently on notice of the nature of the customers. Nano-X also disclosed its FDA submission strategy, the status of the FDA submissions, and its expectations.

In both Actions, Plaintiffs faced challenges regarding pleading and establishing a strong inference of scienter. While not required to do so, the complaints do not allege that Defendants

---

[7] *See* David H. Kistenbroker, et al., *Developments in Securities Fraud Class Actions Against U.S. Life Sciences Companies*, HARV. L. SCH. F. CORP. GOVERNANCE (Mar. 20, 2023), https://corpgov.law.harvard.edu/wp-content/uploads/2023/03/Trial-Invesitgations-and-Securities-Life-Sci-SL-Survey-2023-1.pdf (60% of life sciences cases concerning allegations of misrepresentations during product development were dismissed in 2022, 80% including partial).

had a motive or opportunity to commit fraud and relied on allegations that Defendants knew, or should have known, regarding their allegedly false and misleading statements.

If Plaintiffs survived Defendants' motion to dismiss (in either Action), they would have to conduct document discovery and depositions in a case whose allegations revolve around complex medical equipment technology. There was a substantial risk Plaintiffs might not develop sufficient evidence to survive summary judgment, and if they did, they would be trying a securities fraud case before a jury against Defendants who are attempting to develop a more accessible and affordable diagnostic imaging device which would arguably bring significant societal benefit.

The adequacy of the amount offered in settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in taking any litigation to completion. *Giant Interactive*, 279 F.R.D. at 162. Here, the Settlement falls within the range or reasonableness of approved settlements in the Second Circuit.[8] Accordingly, the Settlement falls within the range of possible approval.

---

[8] See *Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason [] why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

a)   **The Complexity, Expenses, and Likely Duration of the Litigation.**

"'[S]ecurities class actions are generally complex and expensive to prosecute.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*4 (S.D.N.Y. July 21, 2020). "[M]ost securities fraud cases, are complex and challenging as regards both liability and damage." *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 424. Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]". *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010). As noted, this case involved particularly highly technical underlying subject matter, in addition to the complex issues of proof usually attendant to securities fraud litigation.

The Settlement spares the Settlement Class from years of delay and millions of dollars in expenses, while providing an immediate substantial benefit. Without the Settlement, the Settlement Class would incur substantial costs and engage in prolonged litigation through (in the *White* Action) briefing and a decision on motion to dismiss, and (in both Actions) class certification, summary judgment, trial, and subsequent appeals. Discovery costs, including document production and hosting fees, as well as experts—for class certification, loss causation, damages, and subject-matter—would easily reach into the millions of dollars. The fact that Nano-X is a foreign corporation headquartered in Israel and the majority of the documents and evidence would have been located in Israel and in Hebrew posed further difficulties in terms of access to documents and the need to translate them, as well as for the conducting of depositions and trial.

Further, securities class actions that do go to trial typically take more than a decade from filing to affirmance on appeal. Indeed, they are so lengthy and so complex that Plaintiffs risk that the law will shift beneath their feet, jeopardizing even seemingly secure victories under then-existing standards. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533

14

(S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in case brought in 2005, Supreme Court decision after entry of verdict in plaintiffs' favor reduced a billion-dollar verdict into an approximately $78 million recovery).

Thus, the Settlement benefits the Settlement Class by guaranteeing an immediate recovery while sparing Settlement Class Members from millions of dollars in litigation costs.

### b)  The Risk of Establishing Liability and Damages

"In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (citation omitted). *See also In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y.  Apr. 19, 2007) ("[s]ecurities class actions are generally complex and expensive to prosecute."). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Luxottica*, 233 F.R.D. at 310.

There were substantial risks in these Actions that further prosecution may have yielded limited or no recovery. While Plaintiffs in both Actions believed they had merit, there was a real possibility the Court would grant Defendants' motion to dismiss in the *In re Nano-X* Action, which would make dismissal in the *White* Action also likely. Moreover, even if Plaintiffs survived Defendants' motion(s) to dismiss, they would face significant obstacles in discovery. Because this case concerns complex medical devices and the arcana of FDA approvals, Plaintiffs would have to rely on subject-matter consulting experts to evaluate virtually all the discovery they received, increasing costs and risks. Further, because of the highly technical and complex subject matter, many fact depositions would be as complicated and difficult as expert depositions in other lawsuits.

Assuming Plaintiffs successfully moved for class certification, which would likely entail extensive expert reports, and managed to secure favorable evidence through very complex discovery, they would have to survive Defendants' motions for summary judgment. Plaintiffs would rely substantially on expert evidence, including to explain the science underlying Nano-X's imaging devices, to prove loss causation and damages. Because Plaintiffs bear the burden of proof, Defendants could win at summary judgment on any number of issues through a well-placed *Daubert* motion. Moreover, for securities fraud claims, Plaintiffs also must plead and prove scienter, and "proof of state of mind is inherently difficult." *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 426; *accord Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *5 (S.D.N.Y. Sept. 29, 2022).

Finally, Plaintiffs would have to present their case to a jury. These are difficult cases to try from plaintiffs' perspective. As noted, overall, Defendants would likely seek to appeal to a jury's sympathy, arguing they are developing a more accessible and affordable diagnostic imaging device for those currently without access to such technology, due to the cost and complexity of current imaging systems. Even to explain why the Defendants' statements are false, Plaintiffs would have to explain and compare the capabilities of various medical imaging devices, their component parts, and the regulatory approval process. Plaintiffs would rely on their experts, but Defendants would counter with their opposing experts. With a battle of the experts over complex subject-matter, jury confusion would be a significant danger for Plaintiffs, which could lead to jurors simply concluding that Plaintiffs had not sufficiently proven they were entitled to relief. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."). Plaintiffs would also need the jury to credit their experts to prove loss causation and damages, adding another layer of

16

uncertainty. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("the 'jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.'"). The results of trials are unpredictable. *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 164, 264 (E.D.N.Y. 2001).

Even if they prevailed at trial, Plaintiffs would have to survive Defendants' inevitable appeals. This case would generate more than its share of appellate issues because it relies so heavily on complex expert matters. Reversal of the Court's decision on any expert matter could upset the judgment the Settlement Class had spent time and money securing. The Settlement avoids these risks and provides the Settlement Class with an immediate and guaranteed recovery.

### 5.    The Settlement Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. The proposed Settlement does so here, because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom., Wal-Mart*, 396 F.3d 96; *Am. Bank Note*, 127 F. Supp. 2d at 429-30.

As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Class Counsel based on principles of fairness and reliability. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007). Under the proposed Plan of

Allocation, each claimant will receive a *pro rata* share of the Net Settlement Amount, with that share to be determined by the ratio that the claimant's allowed claim bears to the total allowed claims of all claimants. The Plan of Allocation is based upon the premise that Settlement Class Members sustained damages by purchasing their Nano-X securities at artificially inflated prices, consistent with the allegations in both Actions. The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See Veeco*, 2007 WL 4115809, at *14 ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

### 6.    The Proposed Notices Are Constitutionally Sound And Appropriate

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. The requirements of the PSLRA and due process are similar. 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

18

The proposed Notice program includes: (a) mailing or emailing the Long Notice with a link to the Claims Administrator's website and its mailing address and telephone number, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *PR Newswire*. *See* Stipulation at ¶2.9. These methods suffice. *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 149 (S.D.N.Y. 2001) (notice sufficient where it "was reasonably calculated . . . to apprise Class Members of (i) the pendency of this action, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement . . . (iv) their right to appear at the Fairness Hearing . . . , and (v) the binding effect of the Orders and Judgment in this action"); *see also Manual Third § 30.41* (approving use of combined class notice and settlement notice where appropriate).  The Long Notice contains all the information required by the PSLRA, 15 U.S.C. §78u-4(a)(7). *See Stipulation,* Ex. A-1.

**7.      The Additional Rule 23(e) Factors Support Preliminary Approval.**

The proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) will be implemented in a manner historically proven to be effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the fulsome publication of the Summary  Notice over *PR Newswire*, a national newswire service. In addition, a Settlement-specific website will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  Stipulation, ¶2.9.  The Settlement also contemplates a comprehensive claims administration process, which requests information, via a Proof of Claim form, necessary to

calculate a claimant's recognized loss amount under the Plan of Allocation. The Claims Administrator will process the claims, calculate recognized losses under the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to one-third of the Settlement Amount as well as litigation expenses not to exceed $250,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 at 18. In addition, Plaintiffs will seek an award of up to $3,000 each (totaling $9,000) pursuant to 15 U.S.C. §78u-4(a)(4) to compensate them for their time spent in connection with their representation of the Settlement Class. *Id*. The requested fee is equal to the percentage fee awards granted in many other comparable securities class actions in this Circuit.[9] The requested 33% fee is also well within the range of percentage fees awarded in other, non-securities, complex class actions within the Second Circuit, further confirming the reasonableness of the requested award.[10]

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel after the Court executes the Judgment and an order

---

[9] *See, e.g., Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million recovery); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 at 1 (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million recovery); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding attorneys' fees of one-third of $4.9 million partial settlement); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug.1, 2012) (finding an award of 33% of a $12 million settlement reasonable); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.).

[10] *See, e.g., Kkait v. Whirlpool,* 2010 WL 2025106, at *8 (E.D.N.Y Jan 20, 2010) (awarding fees of 33% of $9.25 million settlement fund in FLSA case as "reasonable and 'consistent with the norms of class litigation in this circuit"; citing other awards of 33%); *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y Jan. 29, 2014) (awarding fees of 1/3 of settlement amount in wage-and-hour case).

awarding such fees and expenses.  Stipulation, ¶6.2.  This will be communicated to the Settlement Class in the Long Notice and the Summary Notice.

**8.      The Parties Have Agreed to a Side Agreement Regarding Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of Nano-X common stock represented by such opt outs equals or exceeds a certain threshold, Defendant Nano-X shall have the option to terminate the Settlement. *See* Stipulation ¶2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia v. Yun Ma,* 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 6, 2019).

**9.      The Remaining *Grinnell* Factors Support Preliminary Approval**

*Grinnell* contains several factors that are not coextensive with those in Rule 23(e)(2). These factors, too, support preliminary approval. The second *Grinnell* factor (the reaction of the class) is premature at this time, as notice of the Settlement has not yet been disseminated.

***The risk of certifying a class has relatively little weight***: While class certification is by no means assured, Plaintiffs believe it would not present a significant challenge in these Actions.

***The ability of Defendants to withstand a greater judgment supports approval***: Nano-X is biotechnology company with "limited operating history" that that "will need to obtain additional

financing to implement" its business plan.[11] It has $81.9 million in current assets as of March 31, 2023.[12] Without the Settlement, Plaintiffs would likely not be able to litigate either Action to judgment for several years. In that time, Nano-X might well lose access to capital markets and its solvency would not be assured. The potential inability of Defendants to withstand a greater judgment over the course of this litigation supports approval. *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *5 (E.D. Pa. Sept. 16, 2021) (fact biotech company had no FDA approved products or revenues supported approval).

## IV.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

A class will be certified where the four requirements of Federal Rule 23(a) are satisfied – numerosity, commonality, typicality, and adequacy of representation – plus the requirements of any one of the sub-sections of Federal Rule 23(b). *See* FED. R. CIV. P. 23; *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010).  Conditional certification of a class for settlement purposes only is appropriate where settlement occurs prior to certification of a class. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d. Cir. 2006).

The Parties seek settlement certification under Rule 23(b)(3). A class should be objectively ascertainable, a "modest threshold" for certification. Fed. R. Civ. P. 23(b)(3); *In re Petrobras Sec. Litig.,* 862 F.3d 250, 269 (2d Cir. 2017). The Court need not conduct a rigorous analysis to determine whether to certify a settlement class at this time but should reserve this analysis for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007).

---

[11]    Nano-X,    Annual    Report    (Form    20-F)    (May    1,    2023), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001795251/000121390023034133/f20f2022_nanoximaging.htm
[12] Press Release, Nano-X, Nanox Announces First Quarter of 2023 Financial Results and Provides Business Update (May 22, 2023), https://investors.nanox.vision/news-releases/news-release-details/nanox-announces-first-quarter-2023-financial-results-and#:~:text=As%20of%20March%2031%2C%202023,marketable%20securities%20of%20%24102.9%20million.

Here, the Parties have consented to the certification of a Settlement Class. For the reasons stated below, certification would be appropriate and, therefore, the Court should proceed with authorizing notice. In addition, Plaintiffs should be appointed Class Representatives, and Lead Counsel should be appointed Class Counsel.

First, there were 46.6 million shares issued and outstanding during the Settlement Class Period, with an average daily trading volume during that period of about 1,944,540 shares. Thus. numerosity is easily satisfied. *See* AC, ¶147; *White* ECF 62, ¶192; *see also Avila v. Ardian Corp.*, 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022). While the precise number of Settlement Class Members is unknown, the number certainly exceeds any number considered practical for joinder.

Second, because the Settlement Class's claims arise from essentially the same alleged misstatements and omissions in the same offering documents, and rely on the same theories of liability, questions of law and fact are common to the Settlement Class. Fed. R. Civ. P. 23(a)(2) (emphasis added); *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at *3-*4 (E.D.N.Y. July 23, 2021). Rule 23(a)(2) merely requires that a plaintiff demonstrate common questions of law or fact that are susceptible to class-wide proof. *See* 2 W. Rubenstein, *Newberg on Class Actions* §4:50, 196-97 (5th ed. 2012). Identicality of all facts and legal questions is not necessary – commonality will be demonstrated where the named plaintiff demonstrates just one common question. *Id*. (citations omitted). "Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public." *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012).

Third, Plaintiffs' claims are typical of the Settlement Class' because they share the same factual and legal underpinnings. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Gen. Tel. Co. of Southwest*

23

*v. Falcon*, 457 U.S. 147 (1982). This element "focuses on whether the named plaintiff's interests align with the interests of the rest of the class." *Sharpe*, 2021 WL 3721392, at *4. "Interests align when each class members claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members. Defendants' alleged course of conduct uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the artificially inflated market prices of Nano-X Securities during the Settlement Class Period, and their decline upon the corrective disclosures. Thus, Plaintiffs' claims are typical of the other Settlement Class Members because, like all other Settlement Class Members, they purportedly were injured when the truth about the Nano-X's alleged fraud was revealed. Accordingly, the typicality requirement of Rule 23(a)(3) is met.

Fourth, Plaintiffs will adequately represent the Settlement Class. The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The adequacy inquiry also tests the qualifications of Plaintiffs' counsel to represent a class. *Chilton v. Chiumento Group*, 365 Fed. App'x. 298, 299 (2d. Cir. 2010). There are no apparent conflicts of interest between the Plaintiffs and the absent Settlement Class Members. *See Omar v. 1 Front St. Grimaldi, Inc.*, 2019 U.S. Dist. LEXIS 4242, at *29 (E.D.N.Y. Jan. 8, 2019). Plaintiffs have been committed to the vigorous prosecution of these Actions from the outset and have reached a resolution that they believe is in the best interests of all Settlement Class Members. Further, the firms seeking to represent the Settlement Class are highly qualified and experienced in representing investors in such class actions. *See* D'Aloia Decl. at ¶21 & Ex. 2; Porritt Decl. at ¶2 & Ex. 1.

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual adjudications. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. This securities fraud case is no different. Resolution of Plaintiffs' allegations – including questions of liability, causation, and damages – are susceptible to generalized proof; and such generalized inquiries predominate over any issues specific to individual class members. *See Micholle v. Opthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022).

Finally, superiority is satisfied as there are likely thousands of class members nationwide, and consolidating their claims is in the interests of efficiency and judicial economy. *See id.*, at *4. Accordingly, class certification is appropriate for Settlement purposes.

## V.     PROPOSED SCHEDULE

Plaintiffs propose the following schedule as set forth in the Preliminary Approval Order:

| | |
|---|---|
| Last day to complete mailing of Notices and Claim Forms. | Within 21 calendar days after the entry of the Preliminary Approval Order (¶ 10). |
| The Claims Administrator shall place the Stipulation, the Notice, and the Proof of Claim and Release on a website dedicated to the administration of this Settlement | Within 21 calendar days after the entry of the Preliminary Approval Order (¶ 11). |
| Last day for potential Class Members to request exclusion from the Class. | 21 days before Settlement Hearing (¶ 18). |
| Last day for Class Members to submit objections to the Stipulation, the Settlement, the Plan of Allocation, any Fee and Expense Application. | 21 days before Settlement Hearing (¶ 20). |

| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. | 14 calendar days before Settlement Hearing (¶ 22). |
|---|---|
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards. | 7 days before Settlement Hearing (¶ 22). |
| Settlement Hearing | September 7, 2023 |

## VI.     CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval thereof and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order, directing that notice be sent to Settlement Class Members and settling a date for the final approval hearing.


DATED: June 2, 2023                   Respectfully submitted,


                                      POMERANTZ LLP

                                      /s/ Justin D. D'Aloia            .
                                      Jeremy A. Lieberman
                                      Justin D. D'Aloia
                                      600 Third Avenue, 20th Floor
                                      New York, New York 10016
                                      Telephone: (212) 661-1100
                                      Facsimile: (212) 661-8665
                                      jalieberman@pomlaw.com
                                      jdaloia@pomlaw.com

                                      *Lead Counsel for Lead Plaintiffs and the Class*

                                      LEVI & KORSINSKY, LL

                                      /s/ Nicholas I. Porritt          .
                                      Nicholas I. Porritt
                                      Shannon Hopkins

26

Adam M. Apton
Max E. Weiss
55 Broadway, 10th Floor
New York, New York 10006
Telephone:  (212) 363-7500
Facsimile:   (212) 363-7171
nporritt@zlk.com
shopkins@zlk.com
aapton@zlk.com
mweiss@zlk.com

*Lead Counsel for Lead Plaintiffs and the Class*


THE SCHALL LAW FIRM
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Davian Holdings*

27

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system

/s/ Justin D'Aloia
Justin D'Aloia

28